Kay Denny MEYERS, Appellant,

v.

The CHAPMAN PRINTING COMPANY,
INC. and Marshall Reynolds,
Appellees.

and

The CHAPMAN PRINTING COMPANY,
INC., Appellant,

v.

Kay Denny MEYERS; Eugene F. Mooney, d/b/a Mooney, Mooney & Mooney;
James M. Mooney, d/b/a Mooney, Mooney & Mooney; Matthew L. Mooney,
d/b/a Mooney, Mooney & Mooney; and
William C. Jacobs, Appellees.

and

The CHAPMAN PRINTING COMPANY,
INC. and Marshall Reynolds,
Appellants,

v.

Kay Denny MEYERS; William C. Jacobs;
Eugene F. Mooney, d/b/a Mooney,
Mooney & Mooney; James M. Mooney,
d/b/a Mooney, Mooney & Mooney; and
Matthew L. Mooney, d/b/a Mooney,
Mooney & Mooney, Appellees.

and

Kay Denny MEYERS; William C. Jacobs; Eugene Mooney and Matthew L. Mooney, Appellants,

v.

The CHAPMAN PRINTING COMPANY,
INC. and Marshall Reynolds,
Appellees.

and

The CHAPMAN PRINTING COMPANY,
INC. and Marshall Reynolds,
Appellants,

v.

Kay Denny MEYERS; Eugene F. Mooney; James M. Mooney; Matthew L.
Mooney; Mooney, Mooney & Mooney;
and William C. Jacobs, Appellees.

Nos. 92–SC–396–TG, 92–SC–397–TG,
92–SC–398–TG, 92–SC–399–TG
and 92–SC–400–TG.

Supreme Court of Kentucky.

Oct. 22, 1992.

As Modified Dec. 17, 1992.

William C. Jacobs, Catherine M. Stevens, Eugene F. Mooney, Matthew L. Mooney, Mooney, Mooney & Mooney, Lexington, for Meyers and Mooneys.

Philip C. Eschels, Patrick A. Nepute, Greenebaum, Doll & McDonald, Louisville, John E. Jenkins, John M. Poma, Jenkins, Fenstermaker, Krieger, Kayes & Farrell, Huntington, W.Va., Mark T. Hayden, Greenebaum, Doll & McDonald, Lexington, for Chapman Printing and Reynolds.

LEIBSON, Justice.

This is a case charging "sex" discrimination in violation of the Kentucky Civil Rights Act, KRS 344.010 et seq. Kay Denny Meyers (the employee) was discharged from her employment as a sales representative with Chapman Printing Company, Inc., on or about April 30, 1985. In January, 1986, she filed this suit against both her former employer, Chapman Printing, and its sole shareholder and CEO, Marshall Reynolds (the employer), alleging two separate causes of action, one for sexual harassment during employment and a second for gender-based discharge. Her claims were tried by jury in Fayette Circuit Court before Judge George E. Barker in late August 1989. The jury found for the plaintiff on her sexual harassment during employment claim, awarding her $100,000 in damages for mental and emotional injuries resulting from a sexually hostile and offensive work environment. The jury found against the plaintiff on her gender-based discharge claim.[1]

Meyers' counsel (three attorneys) applied separately to the trial court for allowance of "a reasonable fee" against the employer under KRS 344.450, which reads as follows:

"Any person deeming himself injured by any act in violation of the provisions of this chapter shall have a civil cause of action in circuit court to enjoin further violations, and to recover the actual damages sustained by him, together with the costs of the law suit, including a reasonable fee for his attorney of record, all of which shall be in addition to any other remedies contained in this chapter."

To the extent this section provides for the award of attorney fees for successfully prosecuting a Civil Rights Act claim, it now tracks similar language in the Federal Civil Rights Act, 42 U.S.C. Sec. 2000e–5(k). But the federal counterpart for judicial proceedings found in Sec. 2000e–5(g) provides only for injunctive and "other equitable relief as the court deems appropriate." It does not provide for a "cause of action ... to recover the actual damages sustained by" the employee, as does the Kentucky Act (quoted above). The employer *concedes* compensatory damages as well as injunctive relief are recoverable under the Kentucky Civil Rights Act. *See Mitchell v. Seaboard Sys. R.R.*, 883 F.2d 451 (6th Cir.1989). Because, other than the award of attorneys' fees, the rest of the remedy in KRS 344.450 differs markedly from the relief provided under its federal counterpart, 42 U.S.C. Sec. 2000e–5(g), its differences are key to deciding these further issues:

1) Whether "actual damages" (KRS 344.-450) includes intangibles, i.e., emotional distress, humiliation and "panic disorder."

2) Whether the employee's claims for emotional injuries are preempted by the exclusive remedy provision in the Kentucky Workers' Compensation Act, KRS 342.690.

3) Whether there is a right to trial by jury, and, if so, whether the gender-based discharge claim was submitted to the jury under appropriate instructions.

Although it might seem otherwise when measured by the monumental effort ex-

---

1. The jury also awarded the plaintiff $1,316.24 on a separate claim for a loss of sales commis-
sions earned but not paid during her employment. This award is not at issue.

pended in post-trial litigation over the appropriate amount of attorney fees, and devoted to briefing this subject on appeal, attorneys' fees are *not* the principal issues in this case. The questions that merited granting transfer for immediate resolution involve (1) the right to trial by jury, (2) what constitutes adequate proof of sexual harassment to justify an award for sex discrimination when there has been no gender-based discharge, (3) whether because of the Workers' Compensation Law no award of damages as was made here was permissible under the facts of this case, and, (4) whether the instructions submitting the gender-based discharge claim were erroneously restrictive in requiring a finding "that but for her female sex she would not have been terminated." It was because of these important issues previously unresolved by appellate opinion that we granted the Court of Appeals' Motion to Transfer this case to our docket.

One important purpose of the Kentucky Civil Rights Act was to incorporate the anti-discrimination "policies embodied" in the Federal Civil Rights Acts of 1964 (P.L. 88–352, Title VII—Equal Employment Opportunity) as amended. *See* KRS 344.-020(1)(a). It is Title VII of the Federal Civil Rights Act of 1964 which addresses employment discrimination based on "race, color, religion, sex, or national origin." But there are further purposes expressed in the Kentucky statute not specified in the Federal, including "protect[ing] ... personal dignity and freedom from humiliation." KRS 344.020(1)(b). Whereas the policies embodied in the Kentucky Act are the same as the federal counterpart, the statutory remedy provided through the court system differs markedly because of these further policy statements and because of the difference in remedy provided in KRS 344.450 as contrasted with those provided in the Federal Act, 42 U.S.C. § 2000e–5. These differences provided great obstacles to the trial judge in mapping the course of this litigation. The more closely we studied his decisions along the way, the more impressed we are with the remarkable knowledge, skill and fairness demonstrated by the trial judge, George E. Barker, in addressing and deciding so many novel and complicated questions. We are persuaded that he was substantially correct in each instance in his final resolution of the issue presented. We take up the issues, not necessarily in the order presented, but as they fall in logical sequence. We have considered all of the issues (and subissues) presented but, to avoid unnecessarily extending this Opinion, we address only those that merit discussion.

For reasons to be stated, we affirm the trial court on all issues.

## I. IS THE CLAIM FOR DAMAGES PREEMPTED BY THE KENTUCKY WORKERS' COMPENSATION LAW?

As previously stated, KRS 344.450 provides in pertinent part:

"Any person deeming himself injured by any act in violation of the provisions of this chapter [the Kentucky Civil Rights Act] shall ... recover the actual damages sustained by him...."

In *Mitchell v. Seaboard Sys. R.R., supra,* the United States Sixth Circuit Court of Appeals takes up the question of the right to recover for "humiliation and embarrassment" under this statute, as contrasted with the federal counterpart which provides no such relief. Citing a Kentucky case charging race discrimination prosecuted under the same Act, the Sixth Circuit states:

"The Kentucky Court of Appeals [*McNeal v. Armour & Co.*, Ky.App., 660 S.W.2d 957, 958 (1983)] found that the Kentucky statute at issue provides broader relief than does the federal statute, including damages for humiliation, personal indignity and other intangible injuries.... Consequently, we affirm the [U.S.] district court's award of $7,500.00 for humiliation and embarrassment." *Id.* at 454.

Nevertheless, while conceding these cases establish the right to damages for

emotional distress and humiliation are "actual damages" recoverable in civil action under the Kentucky Civil Rights Act, the employer cites the Kentucky Workers' Compensation Act as preemptive because KRS 342.690(1) states that if an employer is liable for compensation under the Act, "the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer to the employe."

There are two aspects to this "exclusive remedy" claim. The first is that in this case the employee's claim is not limited to emotional distress, but includes a disabling "panic disorder" allegedly brought on by this emotional distress. The jury was instructed that, if they found for the plaintiff, they should award:

"(a) Damages for mental or emotional injury suffered during [Meyers'] employment with Defendant including any reasonable medical or therapeutic expenses incurred in the treatment of such injury...."

And the jury was further instructed such mental or emotional injury included "panic disorder" if sexual discrimination was "a substantial factor in causing" it. The jury awarded $100,000 for "Mental or emotional injury," but –0– for the "Medical and therapeutic expenses" incurred in treating the panic disorder.

The first problem is whether symptoms from panic disorder are part of emotional injury or are different from emotional distress otherwise compensable as "actual damages" under the Kentucky Civil Rights Act, and, if different, should be compensable, if at all, only if they qualify as a disability compensable under the Kentucky Workers' Compensation Act.

The employer cites *Yocum v. Pierce*, Ky., 534 S.W.2d 796 (1976), holding that a work-related psychological injury (a nervous breakdown) resulting in disability is a compensable disability under the Workers' Compensation Act. However, the claim in this case is that severe sexual harassment

caused emotional distress, not that it caused work disability. On the contrary, the further claim for gender-based discriminatory discharge presupposed that the employee was discharged from work she was fully capable of performing, albeit her performance was adversely affected by the sexual harassment allegedly heaped upon her.

The second problem is whether the jury actually found any "panic disorder" directly related to sexual harassment and awarded any damages for panic disorder as such. This question arises because the damages instruction specified "mental or emotional injury ... including any reasonable medical or therapeutic expenses incurred in the treatment of such injury," and the award of "–0–" for medical and therapeutic expenses. Such expenses as were incurred (totaling $11,475) were in connection with the treatment of the "panic disorder," and the failure to award medical or therapeutic expenses suggests that, although the jury believed the sexual harassment caused severe emotional distress for which $100,000 was appropriate, it found no causal connection between the sexual harassment and the panic disorder. Thus it is not certain that any of the damages awarded were for panic disorder.

The employer's counsel never requested that compensation for panic disorder be stated separate from the overall claim for "mental or emotional injury suffered during her employment," and they were included together in the instruction. Meyers' panic disorder was an element of her claim for damages, but not all of Meyers' claim for emotional damages related to her panic disorder claim. We seriously doubt the claim that an award for damages for "panic disorder" should be precluded by the Workers' Compensation Act is adequately preserved.

However, even if we were to assume otherwise, the Workers' Compensation Law does not preclude a claim for damages for mental and emotional injury inflicted by sexually discriminatory practices. The

General Assembly was well aware there was a general law compensating disabled workers when it enacted a specific law addressing the subject of employment discrimination and included in it a civil action in circuit court to recover actual damages including emotional distress and humiliation. As pointed out in *McNeal v. Armour & Co., supra,* "KRS 344.450 provides somewhat broader relief for litigants than 42 U.S.C. § 2000e *et seq.* in that by reference to KRS 344.020(1)(b) and KRS 344.020(2) it allows claims for damages for humiliation and personal indignity [case cited] while federal courts have consistently refused to award damages for any sort of intangible injuries in cases brought solely under 42 U.S.C. 2000e *et seq.*" The applicable rule of statutory construction where there is both a specific statute and a general statute seemingly applicable to the same subject is that the specific statute controls. *See* Vol. 2A, *Sutherland Statutory Construction,* 4th ed., Sec. 51.05 (1984), and cases cited therein. The Kentucky Civil Rights Act is, of course, a controlling specific statute as contrasted with the general law on the subject in the Workers' Compensation Law.

There are general rules relating to the election of remedies which might preclude an employee from recovering under the Civil Rights Act for the same injury if previously compensated under the Workers' Compensation Law, but that is not the case here.

■ Both sides cite cases from other jurisdictions on the preemption issue. We find the more persuasive view to be that expressed by the Michigan Supreme Court in *Boscaglia v. Michigan Bell Tel. Co.,* 420 Mich. 308, 362 N.W.2d 642 (1984), holding that the workers' compensation statute preempts only common law tort claims and does not preempt a statutory civil rights claim. This Court must presume that the General Assembly knew of the Workers' Compensation Law preemption doctrine when it created a private cause of action for "actual damages" caused by discrimination in the Kentucky Civil Rights Act, and that it intended to create an independent cause of action notwithstanding that the two statutes might provide alternative sources of statutory relief in those cases where the mental emotional injury inflicted causes work-related occupational disability.

## II. THE JURY TRIAL ISSUE

■ As previously stated, KRS 344.450 specifies that any person injured by any act in violation of the Kentucky Civil Rights Act "shall have a civil cause of action in circuit court ... to recover the actual damages sustained by him." The employer contends there is no right to trial by jury unless such is expressly provided in the statute. But the Kentucky Constitution, Sec. 7, preserves "the ancient mode of trial by jury." A "civil cause of action" for "damages sustained" is the classical textbook paradigm of an action at law wherein "[t]he constitution guarantees a trial by jury in cases of this character." *See John Brenner Brewing Co. v. McGill,* Ky., 62 S.W. 722, 23 Ky.L.R. 212 (1901); *Republic Coal Co. v. Ward,* 191 Ky. 368, 230 S.W. 295 (1921). The Kentucky Constitution protects the right to trial by jury except in cases "of an equitable nature wherein the remedy at law (trial by jury) is inadequate and will not afford justice." *Shatz v. American Surety Co. of New York,* Ky., 295 S.W.2d 809, 812 (1956).

The critical difference between the federal statute and our Kentucky statute is that the federal statute, 42 U.S.C. 2000e–5(g), provides *only* for injunctive and "other equitable relief as the court may deem appropriate." But the cause of action pursued here under the Kentucky Civil Rights Act is a damage suit like any other. Once a cause of action for damages to be tried in the courts of this Commonwealth has been created by statute, a further provision providing the parties shall have a right to trial by jury is surplusage. To state otherwise would conflict with our Constitution.

■ The employer cites *Kentucky Comm'n on Human Rights v. Fraser,* Ky.,

625 S.W.2d 852, 854 (1981), as authority to the contrary. But the issue in *Fraser* was *not the right to trial by jury in a court action,* but the constitutionality of "allowing the Commission [the Kentucky Commission on Human Rights] to award compensatory damages for embarrassment and humiliation" as elsewhere provided for in the Act in KRS 344.230(3)(h). The Act provides alternative sources of relief, one administrative and one judicial. The question before the Court in *Fraser* was confined solely to the constitutionality of the administrative remedy, and the holding in *Fraser* was that *the administrative process* was "not an unconstitutional usurpation of judicial power." Decisionmaking performed by an administrative agency is an executive function. The right to trial by jury does not attach to an executive function. It is protected only within the exercise of judicial power. But within the exercise of judicial power the right to jury trial is a jural right constitutionally protected, applying equally to those causes of action arising at law *after* as well as before the 1891 Constitution.

> "In drafting our constitutional protections ..., our founding fathers were protecting the jural rights of the individual citizens of Kentucky against the power of the government to abridge such rights, speaking to their rights as they would be commonly understood by those citizens in any year, not just in 1891. The protection afforded to jural rights is not limited definitively to fact situations existing in the year 1891." *Perkins v. Northeastern Log Homes,* Ky., 808 S.W.2d 809, 816 (1991).

The Kentucky Civil Rights Act creates a jural right as well as a right to redress by administrative procedure. To the extent it creates a jural right both plaintiff and defendant are entitled to a trial by jury.

In *Canamore v. Tube Turns Div. of Chemetron Corp.,* Ky.App., 676 S.W.2d 800, 804 (1984), in addressing the distinction between the administrative proceeding typified by *Fraser* on the one hand, and the independent civil action authorized by KRS 344.450 on the other, the Court stated:

> "It [KRS 344.450] is intended to give those individuals who do not wish to proceed before the KHRC an opportunity in circuit court to have the fullest range of remedies allowable."

This, of course, includes trial by jury.

The parties to a judicial action of this nature, plaintiff or defendant, need not inquire whether the General Assembly expressly provided for a trial by jury because the Kentucky Constitution, Section 7, provides for a jury trial in such cases.

KRS 344.450 specifies a *legal* remedy, whereas the Federal Civil Rights Act specifies only *equitable* relief is provided, thus avoiding the right to jury trial issue. We do not speculate as to how the federal courts would decide this issue if the statutes were the same, because we decide this case under the Kentucky Constitution.

## III. EVIDENTIAL SUFFICIENCY TO PROVE SEXUAL HARASSMENT

The employee's two claims in this case were for (1) discriminatory, gender-based discharge and (2) the separate claim for damages for sexual harassment. The employer won on the first issue, and lost only on the second one. The employer's principal argument on this appeal is that the employee's evidence, if believed in its entirety, was insufficient to sustain a cause of action for sexual harassment. No reported Kentucky decision addresses this issue. We must seek elsewhere to decide it. KRS 344.040 specifies, in pertinent part:

> "It is unlawful practice for an employer:
>
> (1) ... to discriminate against an individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex ...; or
>
> (2) To limit, segregate, or classify his employes in any way which would deprive or tend to deprive an individual of

employment opportunities or otherwise adversely affect his status as an employe, because of such individual's ... sex...."

Both employer and employee agree this language tracks the federal law and should be interpreted consonant with federal interpretation.

Both sides cite and quote *Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) as the definitive case on the proof necessary in a sexual harassment claim. Referring to federal guidelines codified in 29 CFR § 1604.11(a), *Meritor* holds:

"... sexual misconduct constitutes prohibited 'sexual harassment,' whether or not it is directly linked to the grant or denial of an economic quid pro quo, where 'such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.'" 477 U.S. at 65, 106 S.Ct. at 2404.

Referring to the federal guidelines codified in 29 CFR § 1604.11(a), *Meritor* states "the kinds of workplace conduct that may be actionable under Title VII" include "unwelcome sexual advances, requests for sexual favors, *and other verbal or physical conduct of a sexual nature." Id.* [Emphasis added.]

However, the United States Supreme Court states that "not all workplace conduct that may be described as 'harassment' affects a 'term, condition, or privilege' of employment within the meaning of Title VII." *Id.* at 67, 106 S.Ct. at 2405. The United States Supreme Court then *sets the standard for judging the level of sexual harassment* to establish a claim as follows:

"For sexual harassment to be actionable, it must be *sufficiently severe or pervasive* 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" [Emphasis added.] *Id.*

■ Thus the issue here is whether there was evidence from which the fact-

finder could reasonably believe in the circumstances of this case that the employer's conduct was "sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." If so, there was a submissible issue.

■ In so deciding we do not write on a clean slate. On motion for directed verdict and on motion for a new trial the trial judge, perforce, made an initial decision that the plaintiff's evidence was, if believed, sufficient to show misconduct so "severe or pervasive" as to be legally actionable. In reviewing those decisions, the reviewing court must ascribe to the evidence all reasonable inferences and deductions which support the claim of the prevailing party (*Brown Hotel Co. v. Marx,* Ky., 411 S.W.2d 911 (1967), and, as stated in *Davis v. Graviss,* Ky., 672 S.W.2d 928, 933 (1984):

"Once the issue is squarely presented to the trial judge, who heard and considered the evidence, neither we, nor will the Court of Appeals substitute our judgment ... for his unless clearly erroneous."

Deciding whether the evidence presented proves misconduct "severe or pervasive" is not a question of law but a question of fact, albeit a question of ultimate fact. It is similar in nature to whether damages are excessive (*Davis v. Graviss, supra*), whether negligence is gross (see discussion of *Horton v. Union Light, Heat and Power Co.,* Ky., 690 S.W.2d 382 (1985), *infra*), and to other complex issues with an interpretive component such as whether the design of a product is defective or professional negligence has occurred.

■ In reviewing this issue of evidential sufficiency the appellate court must respect the opinion of the trial judge who heard the evidence. It is significantly more difficult to overrule such a finding, sustained by the trial judge, than it would be to point out that some simple fact, an element of proof which need not be evalu-

ated, is missing from the proof. We are not in the same position, or as good a position, as was the judge who sat through this trial to decide whether the jury could reasonably find "severe or pervasive" sexual harassment from the evidence presented.

The employer concedes that "generally, the standard of review for jury trials in Kentucky is whether the jury's findings are clearly erroneous." But the employer then argues that the issue whether "sexual harassment is severe or pervasive should be reviewed de novo" because it is "dependent upon a mix of fact and law," citing Jordan v. Clark, 847 F.2d 1368 (9th Cir. 1988). We agree that deciding whether evidence of sexual harassment rises to the level of "severe or pervasive" contains an interpretive component. But we do not agree that this means we should substitute our judgment on the issue for that of the jury and the trial judge. The interpretive component does not change basic character from a question of fact to a question of law.

The employer's argument for de novo review and for nonjury trial are crossover issues. Both are grounded in the view that juries should not be permitted to exercise the interpretive function in factfinding. Our Kentucky Constitution, Sec. 7, answers both.

In Horton v. Union Light, Heat and Power Co., supra, we hold that a question of this nature remains essentially a question of fact for the jury; a directed verdict is appropriate if the only reasonable inference from the evidence fails to sustain the claim. We state:

"The role of the jury in interpreting the evidence and finding the ultimate facts is an American tradition so fundamental as to merit constitutional recognition. U.S. Const.Amend. VII; Ky.Const. Sec. 7. The conscience of the community speaks through the verdict of the jury, not the judge's view of the evidence.... [If] deciding when to take a case from the jury is a matter of degree, a line drawn in sand, ... this is all the more reason why the judiciary should be careful not to overstep the line.

The role of the appellate court when deciding negligence issues of this sort is limited to viewing the evidence from a standpoint most favorable to the prevailing party. [citation omitted.] ... the verdict of the jury resolves any conflicts in the testimony and also any conflicts in the reasonable inferences to be drawn from the testimony in favor of the prevailing party...." Id. at 385.

The Federal Act, as discussed earlier, provides only for "equitable relief," 42 U.S.C. Sec. 2000e-5(g), thus eliminating jury trial. The Kentucky Act includes relief at law for actual damages, to include emotional distress and humiliation. Notwithstanding the U.S. Ninth Circuit Court of Appeals decision (Jordan v. Clark, supra) cited to us utilizing de novo review, such review is inappropriate to ultimate fact questions under our Kentucky Act.

It would unduly burden this Opinion to outline all of the evidence in this record which supports the inference that the employer engaged in abusive and intimidating conduct of a sexual nature, and the finding of harassment of a severe or pervasive nature causing damages as awarded. It suffices to summarize that after Reynolds and his company (Chapman) acquired the company where Meyers was employed in February 1983, and continuing through her discharge in April 1985, Reynolds routinely conducted sales meetings where Meyers was the only woman during which he used language loaded with obscenity and sexual innuendo, and included embarrassing comments and terminology addressed directly to Meyers. Further, on several occasions Meyers was called to Reynolds' office in West Virginia where conversations took place suggesting that women in general, and Meyers in particular, were unfit for the work. Finally, there was testimony supporting the inference that Reynolds' sexually demeaning attitude towards women pervaded the whole sales operation, in the form of gender-based discrimination in as-

signments and conversation with other employees on the job reporting Reynolds' hostility towards women. One of the complaints on this appeal is that this latter testimony was inadmissible hearsay, but in this instance it was relevant not to prove its truth, but to show why Meyers believed she was working in a sexually hostile work environment and consequently suffered emotional distress. *See* Lawson, *The Kentucky Evidence Law Handbook*, 2d Ed., § 8.00(B) (1984).

When the evidence is considered in its entirety, with all reasonable inferences drawn in favor of the prevailing party, we affirm the decision of the trial court overruling the employer's motion for a directed verdict.

## IV. THE INSTRUCTIONS ON THE CLAIM OF GENDER–BASED DISCHARGE

▬ The employee claims the right to a new trial on her gender-based discharge claim on grounds the trial court's instructions submitting this issue were erroneous. Specifically, the employee complains that the court used "but for" language in submitting the causation aspect, and this can only mean "solely because of." She believes the instructions should have directed the jury to decide for the plaintiff if she proved that her sex was one of the factors in her discharge, unless the employer then proved to the jury's satisfaction that she would have been discharged anyway. However, the issue here is not whether this is true as a general statement of the law, but whether it is fair to state the instructions misstate this proposition. In *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), the United States Supreme Court interprets "because of such individual's ... sex" (the language in both Title VII and KRS 344.-040) as providing a cause of action as long as sex discrimination was a substantial contributing factor in causing discharge, even if not the sole cause. The *Price Waterhouse* decision states in pertinent part, "we

know that the words 'because of' do not mean '*solely* because of.'" 490 U.S. at 241, 109 S.Ct. at 1785. The "but for" language does not translate to "solely because of." It only mandates that sex discrimination be a contributing and essential factor.

This type of case is called a "mixed motive" case. The Civil Rights Act mandates a recovery so long as sexual discrimination is one of the reasons, unless the employer can prove to the satisfaction of the trier of fact that discharge would have occurred anyway. The employee points out that this interpretation was followed in *Board of Trustees of U. of Ky. v. Hayse*, Ky., 782 S.W.2d 609 (1989), which was a "mixed motive" case. But the opinion in the *Hayse* case was referring to the proof necessary in such cases, and not to how the jury should be instructed in such cases.

▬ There are three things wrong with the employee's complaint regarding jury instructions:

1) As stated above, the "but for" language used in the trial court's instructions neither states nor implies "solely because." In the context used "but for" did not require a finding of sole cause, but only of substantial factor.

2) It is questionable that Meyers' objection to the instruction sufficiently preserved the error. Although Meyers objected to the "but for" language, Meyers tendered no instruction fully describing her view of how to properly frame the same issue. She contends that once she objected and asked that "substantial or motivating" factor language be used instead of "but for," the burden was on her opponent, the employer, to complete the record by submitting a further instruction advising the jury that it should nevertheless find for the employer if they believed the employee would have been discharged even if no improper motive existed. The requirements of CR 51(3) are such that before a party may complain of error in the instructions, the party must accompany the objection with a fully correct instruction, or, at

the least, must advise the court sufficiently so that the court can understand both the nature of the objection and what needs to be done to correct it. Here the employee's objection to the trial court was limited to complaining about the "but for" language, and asking it be rephrased to state "that her female sex was a substantial and motivating factor in her termination." The second part of the "mixed motive" approach, exonerating the employer if the employer proved the employee would have been discharged anyway, was not proposed, and as such the concept presented was incomplete.

3) The *Price Waterhouse* case was not a jury trial, and is not authority on how juries should be instructed. In instructing juries, Kentucky uses the "bare bones" method. This does not include explaining evidentiary matters or evidentiary presumptions within the instructions.

> "They should not contain an abundance of detail, but should provide only the "bare bones" of the question for jury determination. This skeleton may then be fleshed out by counsel on closing argument." Bertelsman & Phillips, *Kentucky Practice*, Vol. 7 (1991 Supp.), and authorities cited therein.

In Kentucky, the burden of proof is always on the party who would lose if no evidence was presented. CR 43.01(2). In Kentucky jury instructions do not include evidentiary presumptions. Such presumptions alter the burden of going forward with the evidence, and thus may result in a directed verdict in the absence of countervailing evidence, but the jury instructions should be framed only to state what the jury must believe from the evidence in order to return a verdict in favor of the party who bears the burden of proof. *See Webster v. Commonwealth*, Ky., 508 S.W.2d 33 (1974), *cert. denied* 419 U.S. 1070, 95 S.Ct. 657, 42 L.Ed.2d 666 (1974). Thus, as the trial court properly decided, under Kentucky procedure the "but for" phrase used to express the causation issue was adequate. The "but for" test does not require that the jury find sex discrimination was the exclusive motive for the employee's discharge, but only that it was an essential ingredient. In a civil action seeking damages for a discharge motivated by sex discrimination, a "but for" test is a fair interpretation of the substantial factor standard. As stated in Judge Barker's Opinion overruling the motion for a new trial on this ground:

> "A substantive violation of the statute only occurs when consideration of an illegitimate criterion is the 'but-for' cause of the adverse employment action."

## V. ATTORNEYS' FEES

The "tail wagging the dog" in this case both at the trial and on appellate review has been the argument over calculating what is "a reasonable fee for [the employee's] attorney of record," as provided for in KRS 344.450.

Plaintiff's attorney submitted their "First Application" for attorney fees and expenses on September 18, 1989. This fee bill was vigorously contested, with extensive discovery and protracted litigation, culminating in an opinion covering fourteen pages delivered by the trial judge almost nine months later.

The trial court originally awarded attorneys' fees as follows:

"First Application," i.e., fees connected with successfully representing the plaintiff on her sexual harassment claim $141,009.85

"Attorney Fee Litigation," i.e., litigation over attorneys' fees claimed in the "First Application" $ 10,765.00

Total $151,774.85

Additionally, plaintiff was awarded $12,-423.27 in court costs and out-of-pocket expenses, for a grand total of $164,198.32 in attorneys' fees and costs. This award was later adjusted to total attorneys' fees of $150,662.85, and a final total of $163,-086.32.

The attorneys' fee award for the principal litigation (the "First Application") was arrived at by determining the appropriate number of hours reasonably expended by each of the plaintiff's three attorneys, multiplied by the trial court's finding as to an appropriate hourly rate, with the total sum then reduced by 15% using the "degree of success achieved" as "a critical factor." The trial court arrived at this 15% reduction because the jury had decided against the plaintiff on her gender-based discharge claim, and thus the plaintiff was not entirely successful.

> "In recalling the evidence presented at trial, the Court finds that 85% of the evidence produced was relevant and necessary as to both the issues of discriminatory workplace and wrongful discharge."

The trial court arrived at an appropriate award to plaintiff's attorneys for "attorney fee litigation" by calculating the appropriate number of hours, multiplying by a rate the trial court found appropriate for this type of litigation (as contrasted with the principal litigation), and then reducing the total sum arrived at by 75%, stating:

> "The question is presented, how many of these hours were really necessary to fully apprise the Court of all the relevant facts and legal issues involved in determining a reasonable attorney fee."

The trial court overruled the defendant's complaint against the payment of three attorneys, stating "this case was sufficiently complex and difficult to prosecute to

entitle Plaintiff to the services of the three attorneys employed."[2]

Both sides complain about the attorneys' fees award. The employer complains the trial court failed to adequately consider Meyers' limited success (she lost the gender-based discharge claim), and failed to sufficiently reduce the hourly rate claimed by plaintiffs' counsel, and further complains that there is no basis for an award of out-of-pocket expenses exceeding taxable court costs. On the other side, the employee's counsel complains (1) compensation should have been enhanced because the plaintiff was represented on a contingency basis, (2) because of the 15% reduction for lack of "total success," and (3) for severely reducing the fee (by 75%) for post-trial litigation.

The court allowed *no* recovery to the plaintiff's attorneys for the extensive hours spent in "Attorneys' Fee Litigation," except to the extent "some of the hours spent by Plaintiff's attorneys were necessitated by Defendants' attack." Thus after determining the number of hours expended and a reasonable hourly rate for the "Attorney's Fee Litigation,"[3] the court reduced the fee claimed in this respect by 75%, making a final award of $10,765.

Thus the total award for attorneys' fees, $150,662.85, was substantially more than the plaintiff's total recovery, $101,316.24, but explainable, as stated in the trial court's opinion on grounds that the purpose of this statute is "to insure 'effective access to the judicial process' for persons with civil rights grievances" who would not otherwise "have the funds to employ an attorney," and if restricted by the size of the claim (albeit that is a factor to consider) there would be no incentive to pursue many worthwhile cases. The trial court states, "the court should not undertake to adopt some arbitrary proportionate relationship

---

2. The multiple representation aspect of the attorneys' fee award has not been further pursued on appeal.

3. The court used a lesser hourly rate in connection with litigating attorneys fees than in representing the principal claim.

between the amount of attorney fees awarded and the amount of damages awarded."

Both sides agree that the controlling case in deciding upon an appropriate award of attorneys' fees where authorized by statute to insure effective access to the judicial process for persons with civil rights grievances is *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). This case was decided under the Civil Rights Attorney's Fees Awards Act of 1976 (42 U.S.C.S. Sec.1988), patterned in part on Title VII of the Federal Civil Rights Act. Under the United States Supreme Court's analysis in *Hensley v. Eckerhart*, the attorney's fee awarded should consist of the product of counsel's reasonable hours, multiplied by a reasonable hourly rate, which provides a "lodestar" figure, which may then be adjusted to account for various special factors in the litigation. Both sides agreed that the trial court followed this method. Both sides then disagree with the trial court's conclusions regarding number of hours, reasonable hourly rate, and subsequent adjustments which the trial court deemed appropriate as outlined above. We could not possibly confront all of the arguments they have made within the confines of this Opinion. It suffices to say that more pages and efforts have been expended in arguing about the fee award than on the major substantive issues which we have previously addressed, and that none of the arguments presented begins to approach a substantial showing the trial court made any significant miscalculation, much less that it abused its discretion.

We take note of one particular argument because the trial court was ahead of the United States Supreme Court in deciding it. The plaintiff's attorneys claimed the right to "fee enhancement" because the employee was represented on a contingent fee basis. When confronted with the same type of argument as presented to the trial court in this case, the United States Supreme Court in *Burlington v. Dague*, 505 U.S. ——, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992), recently decided (as had Judge Barker) that "contingency enhancement" is inappropriate in such cases. As stated by Judge Barker in his Opinion:

"[A]n enhancement for that reason constitutes an unfair penalty upon the defendant and would have a tendency to encourage meritless litigation. Most lawyers are familiar with non-compensated hours and the market rate takes this into account."

We affirm the trial court's award of attorneys' fee both as to method and calculations.

The judgment of the trial court is affirmed in all respects.

All concur.