Virginia BRYAN, as Administratrix of the Estate of Marty Lewis McMillen, deceased, and Dorothy Camenzind, Mother and Next Friend of Marty Lewis McMillen, Jr.-Camenzind, an infant, Appellants

v.

CORRECTCARE–INTEGRATED HEALTH, INC. and Gloria Herrera, LPN, Appellees.

Nos. 2012–CA–001500–MR, 2012–CA–001921–MR.

Court of Appeals of Kentucky.

Nov. 8, 2013.

Rehearing Denied Jan. 27, 2014.

---

Daniel W. Fendley, LaGrange, KY, for Appellants.

James M. Mooney, Frank Miller, Jr., Nicholasville, KY, for Appellees.

Before COMBS, NICKELL, and STUMBO, Judges.

## OPINION

COMBS, Judge:

Virginia Bryan, as Administratrix of the Estate of Marty Lewis McMillen, and Dorothy Camenzind, mother and next friend of McMillen's minor son, appeal the judgment and supplemental judgment entered in favor of CorrectCare–Integrated Health, Inc., ("CorrectCare") and Gloria Herrera, L.P.N., following a jury verdict in the Oldham Circuit Court. Bryan and Camenzind contend that the trial court erred by denying their motion for a directed verdict and by improperly instructing the jury. They also assert error in the award of $4,397.79 in costs to their opponents in a supplemental judgment. After our review, we affirm the judgment (Appeal No. 2012–CA–001500); we affirm in part and reverse and remand in part the supplemental judgment (Appeal No. 2012–CA–001921).

At the time of his death on December 24, 2006, Marty Lewis McMillen had been an inmate at the Kentucky State Reformatory (KSR), a medium security facility in LaGrange, for 32 days. There is no dispute that McMillen had suffered for many years with chronic obstructive pulmonary disease (COPD) complicated by recurrent pneumothorax. Before arriving at KSR, McMillen had been hospitalized at St. Claire Regional Medical Center in Morehead from November 15 through November 22, 2006. Upon his discharge from St. Claire, he was transferred to KSR from Little Sandy Correctional Complex in Sandy Hook. His move to KSR was approved as a medical transfer from Little Sandy because of recurrent incidents of a collapsed lung (pneumothorax).

On December 8, 2006, McMillen was taken by ambulance from KSR to the emergency room of Baptist Hospital Northeast in Louisville. For several days, attempts were made to ease McMillen's breathing by use of a chest tube. This technique proved unsuccessful.

As a consequence, McMillen underwent major surgery at Baptist Hospital East in Louisville on December 15, 2006. Dr. James Van Daalen performed a left thoractomy, wedge resection, and pleurodesis in order to stabilize McMillen's lung function. He was released from the hospital on December 18, 2006, and was returned to a transitional care ward at KSR. According to a nursing admission note, McMillen complained of "side chest pain from surgery site" when he arrived at the ward; his oxygen saturation levels were 93%.[1]

Gloria Herrera is a licensed practical nurse. She is employed by CorrectCare, a private corporation providing management support for the healthcare needs of numerous correctional facilities including KSR. In December 2006, Herrera was working at the medical unit at KSR where McMillen was recuperating from surgery.

According to her trial testimony, Herrera was assigned to the evening shift at KSR on December 22, 2006. She worked

---

1. Normal oxygen saturation levels in a healthy individual are 96–99%.

overnight from 6 p.m. until 7 a.m. on December 23, 2006. Herrera testified that at 3:45 a.m., McMillen complained to her that he was having trouble breathing and was experiencing pain in his mid-torso. McMillen's oxygen saturation levels had fallen to 87%. Herrera administered a nebulizer treatment. She reminded McMillen to use his inhaler as ordered by the doctor and encouraged him to take the oxygen that had been provided to him. McMillen's blood oxygen level rose above 90%. Herrera continued to monitor him, and he reported to her that he felt better. Herrera indicated that before her shift ended, she gave a status report to the unit's day-shift nurses.

William Burke, also a licensed practical nurse, came on duty in the unit at 6 p.m. on December 23. Burke took McMillen's vital signs at 8:08 p.m. and noted that his oxygen saturation levels had fallen again to 87%. Burke observed McMillen sitting at the side of his bed with his oxygen in place at 3 a.m. on December 24; at 4:43 a.m., he was found dead in his bed by a corrections officer.

Bryan and Camenzind filed this action against CorrectCare and Herrera on November 18, 2008. In their complaint, they alleged that Correctcare, through its employees (specifically Herrera), had been negligent in the care and treatment of McMillen. Correctcare and Herrera answered and denied the allegations made against them.

After a period of discovery, the case was tried to a jury in July 2012. At the close of the plaintiffs' case, the court concluded that no evidence had been presented to demonstrate that anyone other than Herrera had violated the applicable standard of care.[2] Additionally, no evidence had been

presented to indicate that CorrectCare had been independently negligent toward McMillen through its policies or practices at KSR. The court also rejected the contention of Bryan and Camenzind that negligence had been established under the common law doctrine of *res ipsa loquitur.* It denied the motion to direct a verdict against the defense. Later, the court refused to instruct the jury with respect to the doctrine of *res ipsa loquitur.*

After deliberating, the jury concluded that Herrera had not acted negligently in her care and treatment of McMillen. A judgment for the defense was entered on August 1, 2012. A supplemental judgment with respect to an award of costs to the defense was entered on October 3, 2012. This appeal followed.

On appeal, Bryan and Camenzind contend that the trial court erred by denying their motion for directed verdict against CorrectCare on the basis of *res ipsa loquitur.* They argue that the jury was bound by the evidence to presume negligence in this case since McMillen would not have died on December 24, 2006, if CorrectCare had not been negligent. They contend that the "instrumentality of negligence" was CorrectCare's "wholesale abandonment of its duties" to McMillen.

The Kentucky Rules of Civil Procedure (CR) require that appellants include in their briefs a statement with reference to the record showing whether and how an issue for our consideration has been preserved for review. CR 76.12(4)(c)(v). Bryan and Camenzind have failed to provide that statement. Although CorrectCare and Herrera have responded to the merits of the claim, we are not persuaded

---

**2.** At trial, the paintiffs' medical expert indicated that Burke had complied fully with the applicable standard of care.

that the claim of error was properly preserved for appellate review.

■ In order to rely on a claim of insufficiency of the evidence, a party *must* preserve it through a motion for judgment notwithstanding the verdict, which in turn must be predicated upon a directed verdict motion made at the close of all the proof. A mid-trial motion for directed verdict alone is not adequate to preserve an insufficiency of the evidence claim. *See Steel Technologies, Inc. v. Congleton*, 234 S.W.3d 920 (Ky.2007). Bryan and Camenzind have made no indication that either of those motions was made at trial. However, even if the claim had been adequately preserved, we would not reverse the judgment on this basis.

*Res ipsa loquitur* is an evidentiary doctrine that would permit a jury to infer negligence from the state of the circumstances themselves. *Sadr v. Hager Beauty School, Inc.*, 723 S.W.2d 886 (Ky.App. 1987). If the inference to be drawn is strong enough, it can create a rebuttable presumption of negligence, potentially resulting in a directed verdict. *Id., citing Bowers v. Schenley Distillers, Inc.*, 469 S.W.2d 565 (Ky.1971).

■ This case was a contested, true medical negligence action rather than a case arising from the unique circumstances underlying a claim for *res ipsa loquitur* (*e.g.*, sponges or surgical instruments sewn up in a patient during surgery). The jury was presented with fact evidence that was subject to differing interpretations and competing medical opinion testimony. One medical expert testified expressly that Herrera had not deviated from the applicable standard of care. Another testified that Herrera had been diligent in her care of McMillen. The evidence presented at trial certainly did not show beyond dispute that Correctcare had abandoned any duty that it owed to McMillen. Therefore, the trial court did not err by refusing to direct a verdict against the defense.

■ In a related argument, Bryan and Camenzind contend that the trial court erred by failing to instruct the jury on the doctrine of *res ipsa loquitur*. Alleged errors regarding jury instructions are questions of law and are examined under a *de novo* standard of review. *Hamilton v. CSX Transp., Inc.*, 208 S.W.3d 272 (Ky. App.2006).

As noted earlier, *res ipsa loquitur* is an *evidentiary* doctrine that can sometimes create a rebuttable presumption of negligence. In *Meyers v. Chapman Printing Co., Inc.*, 840 S.W.2d 814, 824. (Ky.1992), the Supreme Court of Kentucky observed that such a presumption may alter the burden of going forward with the evidence, "but the jury instructions should be framed only to state what the jury must believe from the evidence in order to return a verdict in favor of the party who bears the burden of proof."

This issue is well analyzed in *Baxter v. AHS Samaritan Hosp., LLC*, 328 S.W.3d 687, 692 (Ky.App.2010):

> The *res ipsa loquitur* doctrine is an evidentiary doctrine which allows a jury to infer negligence on the part of the defendant.... The doctrine, however, creates a rebuttable presumption of negligence.... On occasion, the rebuttable presumption may be strong enough to require a directed verdict.... Instructions on *res ipsa loquitur*, however, should not be submitted to a jury. As recognized by the Supreme Court of Kentucky in *Meyers*, jury instructions should not explain evidentiary matters, evidentiary presumption or contain unnecessary detail. 840 S.W.2d at 824. This principle applies here. Although Baxter could request the application of the doctrine of *res ipsa loquitur* to avoid

a directed verdict or to win a directed verdict, the trial court was correct in refusing to give an instruction on the same.

(Some internal citations omitted.) The trial court properly determined that the doctrine of *res ipsa loquitur* did not apply in this particular medical negligence case. It was correct in declining to direct a verdict on that basis. It was equally correct in refusing to instruct on an issue that the jury could not properly consider.

■ Next, Bryan and Camenzind argue that the trial court erred by failing to instruct the jury on the issue of Correct-Care's liability for acts or omissions of Herrera and any other nursing employee of CorrectCare. This issue is also examined under the *de novo* standard of review.

Bryan and Camenzind contend that the trial court should have instructed the jury that CorrectCare would be held responsible for Herrera's negligence. In a related argument, they contend that the court should have instructed the jury that CorrectCare could be held responsible for the "omissions of unknown nurses who failed to appear on duty in Dorm 12 and provide McMillen with medical care during the thirteen (13) hour day shift." We disagree with both contentions.

The jury exonerated Herrera on the threshold issue of whether her conduct conformed to the standard of care in this case. Any liability on the part of Correct-Care was contingent upon a finding of negligence on the part of Herrera. Therefore, CorrectCare would have been entitled to a directed verdict if the issue of vicarious liability had been presented. *See Hamby v. University of Kentucky Medical Center,* 844 S.W.2d 431 (Ky.App.1992). That issue was rendered moot by the jury's verdict in Herrera's favor. There was no reversible error.

■ And, as the trial court aptly observed, there was no evidence presented to support the assertion of Bryan and Camenzind that "unknown nurses" failed to appear for duty in order to provide McMillen with the medical care that he needed. Thus, the plaintiffs were not entitled to an instruction that would have permitted liability to be imposed upon Correctcare on this basis. Moreover, in view of their allegations of specific acts of negligence, Bryan and Camenzind were limited to proof of only those alleged acts. "[W]here a party pleads negligence in specific terms, he cannot rely on the principle of *res ipsa loquitur* except for the purpose of establishing those specific acts of negligence." *Kroger Grocery & Baking Co. v. Stevenson,* 244 S.W.2d 732 (Ky.1951). Under the circumstances of this case, Bryan and Camenzind were not entitled to broaden their theory of negligence to speculate as to unidentified persons whose conduct may have contributed to McMillen's death.

Finally, Bryan and Camenzind argue that the trial court erred by awarding the appellees certain costs associated with the proceedings. We agree with this assertion in part.

The prevailing party to a civil action is generally entitled to an award of costs. Kentucky Rule(s) of Civil Procedure (CR) 54.04; Kentucky Revised Statute(s)(KRS) 453.040; KRS 453.050.

Bryan and Camenzind object to the trial court's award of costs for the videotaped depositions of three defense witnesses. They contend that these depositions were taken primarily for the convenience of defense counsel and that the trial court erred by awarding the defense the costs associated with them. We disagree.

CorrectCare and Herrera sought and were awarded only the costs of the DVD's of these particular depositions; they did not seek reimbursement for the costs asso-

ciated with a court reporter or the written transcriptions. The provisions of CR 54.04(2) entitle the prevailing party to the "costs of the originals of any depositions (whether taken stenographically or by other than stenographic means)...." The appellants' argument is not well founded; the trial court did not err nor abuse its discretion by directing that these costs be borne by Bryan and Camenzind.

■ Bryan and Camenzind also object to the award of an allowance to Herrera and to two expert defense witnesses of $100 each, per day. We agree that the award for these allowances must be reversed.

KRS 453.040(1)(a) provides that the "successful party in any action shall recover his costs, unless otherwise provided by law." KRS 453.050 provides:

> The bill of costs of the successful party shall include, in addition to other costs taxed ... *the allowance to witnesses,* which the court may by order confine to not more than two (2) witnesses on any one (1) point.

(Emphasis added.)

"Allowance to witnesses" is not further defined by statute. However, we interpret the phrase to mean a subsistence allowance which would ordinarily include a sum for the witnesses' necessary meals, lodging, and travel. Our interpretation of the phrase is further supported by the court's use of the term *"per diem"* to refer to the statutory "allowance to witnesses" in the venerable old case *Nix v. Caldwell,* 81 Ky. 293, 5 Ky.L.Rptr. 324 (1883). *Per diem* is commonly understood to refer to a remittance for daily expenses.

There is a remarkable absence of law to provide guidance pertaining to the nature of the witnesses' allowance. In this case, however, the amount and nature of the expenses incurred by each witness were not properly presented to and considered by the trial court. We remand on this point and direct the trial court to recalculate its award of costs with respect to each of the witnesses identified in the bill of costs submitted by the defense. We make no comment as to the necessity of an upward or a downward adjustment to the amounts previously awarded by the trial court. Additionally, we do not believe that the trial court abused its discretion by permitting an allowance to more than two witnesses testifying on the same issue. It is indisputably within the trial court's sound discretion to permit an allowance according to the facts and circumstances of each case. The sole issue on remand is a recalculation with more specificity as to the computation of the award.

We affirm the judgment. The supplemental judgment is affirmed in part and reversed in part and remanded with directions to conduct further proceedings consistent with this opinion.

ALL CONCUR.