RENDERED: APRIL 14, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0134-MR

SIOBHAN DIAMOND                                                         APPELLANT

v.          APPEAL FROM MCCRACKEN CIRCUIT COURT
            HONORABLE W.A. KITCHEN, JUDGE
            ACTION NO. 19-CI-00136

BAPTIST HEALTHCARE SYSTEM,
INC.                                                                    APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CETRULO, DIXON, AND EASTON, JUDGES.

DIXON, JUDGE: Siobhan Diamond appeals from the opinion and order granting

summary judgment in favor of Baptist Healthcare System, Inc. (BHS), entered by

the McCracken Circuit Court on January 4, 2022. Following a careful review of

the record, briefs, and law, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

In 2015, BHS hired Diamond as a registered surgical nurse. In May 2018, Diamond was diagnosed with breast cancer and underwent a double mastectomy. She returned to work with no restrictions on July 2, 2018.

Although Diamond was still able to perform her work, she wore compression sleeves to minimize swelling in her arms and hands. Even so, one of her hands experienced noticeable swelling. Some BHS employees referred to Diamond's swollen hand as a "monster hand." This comment, combined with two others, upset Diamond, and another nurse reported the statements to a supervisor. The supervisor met with Diamond and other supervisors to discuss these incidents, and no further offensive comments were made.

On July 13, 2018, at shift change, Diamond relieved a nurse during a biopsy surgery. The purpose of the surgery was to collect a specimen for testing to determine the best path of treatment for the patient. The off-going nurse charted that the specimen had been removed but failed to verify her entries. Diamond made no inquiries regarding the whereabouts of the specimen but verified the chart to close it out. Unfortunately, no specimen was sent to the laboratory.

The surgeon called the lab a few days later to obtain the results and was informed the specimen was not received, which required the patient to undergo another procedure. Both Diamond and the nurse she relieved were

suspended pending an investigation. When questioned, Diamond could not recall the procedure. It was ultimately determined by BHS supervisors that Diamond violated its policies by falsifying the patient's chart and acting recklessly, which led to her termination on July 27, 2018.

On February 14, 2019, Diamond sued BHS alleging: (1) disability discrimination, (2) retaliation, (3) hostile work environment, and (4) negligent infliction of emotional distress (NIED). Substantial discovery occurred, including multiple depositions. BHS eventually moved for summary judgment, which the trial court granted, and this appeal followed.

**STANDARD OF REVIEW**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR[1] 56.03. "[T]he proper function of summary judgment is to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at trial warranting a judgment in his favor." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991).

---

[1] Kentucky Rules of Civil Procedure.

An appellate court's role in reviewing an award of summary judgment is to determine whether the trial court erred in finding no genuine issue of material fact exists, and the moving party was entitled to judgment as a matter of law. *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996). A grant of summary judgment is reviewed *de novo* because factual findings are not at issue. *Pinkston v. Audubon Area Cmty. Servs., Inc.*, 210 S.W.3d 188, 189 (Ky. App. 2006) (citing *Blevins v. Moran*, 12 S.W.3d 698 (Ky. App. 2000)).

Here, because the trial court granted summary judgment to BHS, we review the facts in a light most favorable to Diamond and resolve all doubts in her favor. Applying the *Steelvest* standard, we agree with the trial court that there was no genuine issue of material fact and that Diamond did not, and indeed could not under the circumstances herein, carry her burden. Therefore, we conclude that summary judgment was properly granted to BHS.

**LEGAL ANALYSIS**

Diamond alleges that the behavior of BHS violated the Kentucky Civil Rights Act (KCRA).[2] KRS 344.040 prohibits discrimination "against an

---

[2] Kentucky Revised Statutes (KRS) 344.010 *et seq*.

individual with respect to compensation, terms, conditions, or privileges of

employment, . . . because the person is a qualified individual with a disability[.]"[3]

> KRS 344.010(4) specifically provides:
>
> "Disability" means, with respect to an individual:
>
>> (a) A physical or mental impairment that substantially limits one (1) or more of the major life activities of the individual;
>>
>> (b) A record of such an impairment; or
>>
>> (c) Being regarded as having such an impairment.
>
>> Persons with current or past controlled substances abuse or alcohol abuse problems and persons excluded from coverage by the Americans with Disabilities Act of 1990 (P.L. 101--336) shall be excluded from this section.

(Footnote omitted.)  *See also* 42 U.S.C.[4] § 12102(2).  "Whether the plaintiff has an

impairment and whether the conduct affected by the impairment is a major life

activity under the statute are legal questions."  *Hallahan v. The Courier-Journal*,

138 S.W.3d 699, 707 (Ky. App. 2004) (citations omitted).  "The ultimate

determination of whether the impairment substantially limits the major life activity

generally is a factual issue for the jury, **but it may be resolved upon summary**

---

[3]  Kentucky courts have "consistently interpreted the civil rights provisions of KRS Chapter 344 consistent with the applicable federal anti-discrimination laws."  *Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 492, 495 (Ky. 2005).  The Supreme Court of Kentucky held KRS 344.040 "should be interpreted consonant with federal interpretation" in *Meyers v. Chapman Printing Company, Inc.*, 840 S.W.2d 814, 821 (Ky. 1992).

[4]  United States Code.

**judgment under the appropriate circumstances**." *Id.* (emphasis added). Diamond only includes the first half of this quote in her brief; however, the second half cannot be ignored, especially since it is applicable to the case herein. "Major life activities include, among other things, walking, seeing, hearing, performing manual tasks, caring for oneself, speaking, breathing, learning, and working." *Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 592 (Ky. 2003) (footnotes omitted). Despite the fact this list is not all-inclusive, Diamond failed to allege any impairment to any of these or similar activities. Most notably, she was released to work with no restrictions and admits her impairment did not affect her ability to do so. While we dare not diminish the impact of breast cancer upon Diamond, we recognize the impairments she experienced did not amount to those substantially limiting her ongoing major life activities. Further, Diamond presented no proof she had a record of impairment or that the BHS supervisors who terminated her employment regarded her as disabled. In fact, some of the supervisors making this decision testified they were unaware Diamond had cancer until after she was fired. Therefore, there is no genuine dispute of material fact that Diamond was not disabled.

The Supreme Court of Kentucky has identified two avenues to establish an employment discrimination case. *Williams*, 184 S.W.3d at 495. The first path is to produce direct evidence of discriminatory animus. The second path

is to satisfy the burden-shifting test of *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Diamond has not successfully navigated either path.

"Direct evidence of an unlawful employment practice is evidence that directly reflects the alleged animus and that bears squarely on the contested employment decision." *Hallahan*, 138 S.W.3d at 710. "However, direct evidence does not include stray remarks in the workplace, statements by decision-makers unrelated to the decisional process itself, or statements by nondecision-makers." *Id.*

Diamond alleges a few statements made by a handful of BHS employees constitute such direct evidence. The first statements made by "several" BHS employees – only two of which she could recall specifically, and as previously addressed herein – referred to Diamond's swollen hand as a "monster hand." The second statement, by a doctor, was for Diamond to "hold your tits." She also claims one nurse asked about her compression sleeves and another one told her how lucky she was not to have to wear a bra. We agree with the trial court that these isolated statements are insufficient to evince any discrimination practices in the workplace. While these actions may indeed be offensive, pursuant to *Hallahan*, they merely constitute "stray remarks" and actions by nondecision-

makers. Therefore, they are insufficient to constitute direct evidence of discriminatory animus.

Under the *McDonnell Douglas* framework, a plaintiff can establish a *prima facie* case of gender discrimination by proving that he or she: "(1) was a member of a protected class, (2) was discharged, (3) was qualified for the position from which they were discharged, and (4) was replaced by a person outside the protected class." *Williams*, 184 S.W.3d at 496. In the case herein, there is no dispute that the second or third elements were met, and there appears to be no evidence concerning the fourth element; nevertheless, the parties herein dispute the first element. Failure to prove any one of these elements is fatal to establishing a *prima facie* case of discrimination based on a disability. As previously discussed, Diamond has not proven she was a member of a protected class and, therefore, her claims fail as a matter of law. Accordingly, the trial court properly granted summary judgment on this claim.

We now turn to the dismissal of Diamond's retaliation claims. There are four elements of a retaliation claim: "a plaintiff must produce evidence that (1) she engaged in protected activity (2) that was known to the defendant (3) who thereafter took an employment action adverse to the plaintiff, (4) which was causally connected to the plaintiffs [sic] protected activity." *Asbury Univ. v.*

-8-

*Powell*, 486 S.W.3d 246, 258 (Ky. 2016). Taking the facts as presented, Diamond is unable to prove her retaliation claims.

Whether Diamond "engaged in protected activity" is the first element of a *prima facie* action of impermissible retaliation. *Brooks v. Lexington Fayette Urban Cnty. Housing Auth.*, 132 S.W.3d 790, 803 (Ky. 2004). Without properly alleging this element, from which the others flow, Diamond has no claim under the KCRA. "Protected activity" is defined by KRS 344.280:

> [i]t shall be an unlawful practice for a person, or for two (2) or more persons to conspire:
>
> > (1) [t]o retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by this chapter, or because he has made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this chapter[.]

KRS 344.280(1) consists of two clauses, commonly referred to as the "opposition clause" and "participation clause." The first clause concerns opposition to perceived violations of the KCRA, which is inapplicable to the case at hand; the second deals with active participation in a charge, complaint, or investigation of any proceeding under the KCRA. Diamond's allegations attempt to state a cause of action under the participation clause for an informal verbal complaint to a supervisor. However, it is undisputed that no formal investigation, proceeding, or hearing under the KCRA was ever undertaken.

-9-

The participation clause "protects proceedings and activities which occur in conjunction with or after the filing of a formal charge with the [Equal Employment Opportunity Commission (EEOC)]; it does not include participating in an employer's internal, in-house investigation, conducted apart from a formal charge with the EEOC." *E.E.O.C. v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000) (footnotes and citations omitted).[5] "[I]nstigation of proceedings leading to the filing of a complaint or a charge, including a visit to a government agency to inquire about filing a charge, is a prerequisite to protection under the participation clause." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989) (internal quotation marks and citation omitted). In Kentucky, the KCHR *must* be involved – even if only through an inquiry about filing a charge – to invoke statutory protection under the participation clause.

Any "charge" or "complaint" in which Diamond alleges she participated was, at most, internal in nature as the actions were confined within BHS. No action was made or contemplated involving the KCHR. This failure is fatal to Diamond's claims under the KCRA.

Although Diamond also alleged she was subjected to a hostile work environment in violation of the KCRA, she failed to present any argument

---

[5] The Kentucky Commission on Human Rights (KCHR) is Kentucky's counterpart to the federal EEOC. The KCHR is established and enabled by KRS 344.010 *et seq.*, specifically KRS 344.015 and KRS 344.150.

regarding the dismissal of this claim in her brief. We will not search the record to construct Diamond's argument for her, nor will we go on a fishing expedition to find support for her underdeveloped arguments. *See Prescott v. Commonwealth*, 572 S.W.3d 913, 923 (Ky. App. 2019). "Even when briefs have been filed, a reviewing court will generally confine itself to errors pointed out in the briefs and will not search the record for errors." *Milby v. Mears*, 580 S.W.2d 724, 727 (Ky. App. 1979).

Diamond does not challenge the dismissal of her NIED claim.

## CONCLUSION

Therefore, and for the foregoing reasons, the order of the McCracken Circuit Court is AFFIRMED.

ALL CONCUR.

BRIEFS FOR APPELLANT:

John S. Friend
Louisville, Kentucky

BRIEF FOR APPELLEE:

Donna King Perry
Jeremy S. Rogers
Alina Klimkina
Louisville, Kentucky