Kenneth R. BOWERS, Appellant,

v.

SCHENLEY DISTILLERS, INC., Appellee.

Court of Appeals of Kentucky.

Feb. 26, 1971.

As Modified on Denial of Rehearing
July 2, 1971.

Charles M. Leibson, Leibson & Leibson, Louisville, for appellant.

William D. Grubbs, Woodward, Hobson Fulton, Louisville, for appellee.

EDWARD P. HILL, Jr., Judge.

A jury found against the appellant-plaintiff in his suit for damages for personal injuries sustained in a fall while on the premises of the appellee as a "business visitor" (computer of taxes on whiskey).

Appellant seeks a reversal of the judgment entered on the verdict on the grounds (1) he was entitled to a directed verdict; (2) there were errors in the instructions; (3) incompetent evidence was admitted, and (4) he was prejudiced by the failure of the trial court to excuse a juror for cause.

The appellant, an employee of the Alcohol, Tobacco and Fire Arms Division of the Internal Revenue Service, was sitting in a small office built within a large warehouse, a part of appellee's distillery at 17th and Breckinridge in Louisville, Kentucky, on December 11, 1967, when two of appellee's employees disconnected a hot steam pipe over the office. This resulted in a large volume of steam and hot water being blown therefrom down onto the metal top and over the sides of the office. The appellant, hearing the sounds emanating from the condition, including the scampering of two men in their efforts to get out of the way of the heat, became frightened and ran out of the small office onto a metal stairway from which he fell and sustained injuries. The pipe from which the steam escaped carried 125 pounds of steam pressure. There was evidence that even under normal conditions the stairs from which

appellant fell were "worn" and "slippery"; that the risers were 12 inches apart; and that the stairs were constructed at an angle much too steep.

At this point, two questions arise which should be answered before proceeding further. First, what was the legal status of the appellant on the appellee's premises at the time of the accident? The second question is, what duty did the appellee owe to appellant?

■ The answer to the first question may come easier if we define the terms "licensee" and "invitee." "A licensee is a person who is privileged to enter or remain on land only by virtue of the possessor's consent." Restatement of the Law of Torts, Second, § 330.

■ An invitee is defined in the Restatement of the Law of Torts, Second, §§ 332, as follows:

"(1) An invitee is either a public invitee or a business visitor.

"(2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.

"(3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land."

■ The distillery business is regulated by laws under which employees of the government have a right to be and remain on the premises of the distillery. The distillery constructed the small "cubicle" designated an office (with just room for two desks) for the exclusive use of the appellant. Clearly the appellant was a "business visitor" within the meaning of the Restatement. He had been "invited" to "enter" and "remain on" the appellee's "premises" for a purpose directly connected with business dealings with the appellee.

We turn now to the second question: What duty did the appellee owe to the appellant? Again we draw on Restatement of the Law of Torts, Second, § 341A, which states:

"A possessor of land is subject to liability to his invitees for physical harm caused to them by his failure to carry on his activities with reasonable care for their safety if, but only if, he should expect that they will not discover or realize the danger, or will fail to protect themselves against it."

It is pertinent also to quote from Comment "a" of the above section:

"The obligation of the possessor is therefore not limited to one of reasonable care to protect him against conditions of which he does not know or have reason to know, as in the case of the licensee (see § 341), but extends also to protection against the risk of harm from activities of which the invitee knows or has reason to know, where it may reasonably be expected that he will fail to protect himself notwithstanding such knowledge."

This court has had several occasions to treat the subject now under discussion. In Mackey v. Allen, Ky., 396 S.W.2d 55, at page 58 we said:

" * * * [T]he Restatement of Torts has been cited repeatedly by this court as a reliable source of authority on this general subject. * * * [I]t really makes no difference whether she was an invitee or a bare licensee, because the basic distinction between the duties of the possessor is that he owes an invitee the duty of *discovering* a dangerous condition, whereas he owes a licensee only the duty to warn him of a dangerous condition *already known* to the possessor."

See also Kentucky & West Virginia Power Co. v. Stacy, 291 Ky. 325, 164 S.W.2d 537 (1942).

Having determined that appellant's legal status on the premises and the duty appellee owed appellant, we now discuss the facts and circumstances of this particular case to ascertain whether there was any breach of that duty to the appellant. There were two cutoffs on the system— one large cutoff in the basement and another on the pipe that led to the heater. The two workmen engaged in pipe work at the time of the accident in question stated they thought they had turned off the steam pipe that led to the heater, but for some unknown reason the cutoff did not completely close. One of the appellee's witnesses speculated that "some little piece of scale or something gets under the seat that does not give you complete closure." Others speculated that there was simply a failure to turn the cutoff valve completely off. At any rate, water and steam were all about before the cutoff in the basement was used, giving evidence that the first valve was certainly not closed. These employees of appellee knew they were working with a dangerous substance when not properly controlled and confined. They knew it was important to be sure the steam line was cut off before uncoupling the steam pipe. The distillery was not in operation on the date of the accident. There was no reason why they could not have turned off both cutoffs. Furthermore, they knew appellant was in the small office under the place where they disconnected the pipe.

Appellant argues that he was entitled to a directed verdict first on the theory that appellee was careless with "abnormally dangerous things and activities"; and second, that appellee is liable under the doctrine of "res ipsa loquitur."

■ To be sure, uncontrolled water and steam are a dangerous combination, but they are perfectly safe when properly confined in safe pipes. The Steamboat New World v. King, U. S. (1853) 16 How. 467, 14 L.Ed. 1019. Obviously a greater degree of care is required when working with hot steam pipes than with cold water pipes. But we cannot accept appellant's theory that a hot steam piping system is inherently dangerous.

Appellant's second theory of law is more persuasive. In Vernon v. Gentry, Ky., 334 S.W.2d 266 (1960), this court enumerated the conditions under which the doctrine of res ipsa loquitur may be applied:

"(1) The defendant must have had full management of the instrumentality which caused the injury; (2) the circumstances must be such that, according to common knowledge and the experience of mankind, the accident could not have happened if those having control and management had not been negligent; (3) the plaintiff's injury must have resulted from the accident."

■ In the instant case, appellee concedes it was in complete control of the system and that the steam and water would not have escaped if the valve had been closed completely. Neither do we think that reasonable minds could differ as to the proximate cause of the appellant's injuries. There was evidence that the stairway from which appellant fell was slick when dry and, no doubt, more so when wet—as it was when appellant ran over it. But the real cause of appellant's injuries was the exciting necessity of getting away from what appellant thought was danger. This apparent danger was increased by the observation of flight therefrom by the two workmen.

■ In many tort cases, in the absence of direct proof of negligent acts, the plaintiff must rely upon presumptions or inferences which may be drawn from the facts proven. The burden of proving negligence always remains with the plaintiff but, upon the basis of circumstances shown, he may be entitled to a rebuttable presumption or to a permissible inference of negligence. The terms "rebuttable presumption" and "permissible inference" are merely descriptive of the weight which must be ac-

corded to circumstantial evidence in a particular case depending upon the degree of probability reflected by the particular facts shown. Lee v. Tucker, Ky., 365 S.W.2d 849.

If, in the light of everyday experience, the probabilities that an accident would not have occurred in the absence of negligence are so overwhelming that reasonable men would be compelled to a conclusion of negligent causation, a rebuttable presumption of negligence arises from a showing that the accident occurred. When a rebuttable presumption arises and the defendant offers no proof at all, the plaintiff is entitled to a directed verdict. Even if the defendant offers explanatory evidence but that evidence fails to reduce the conclusive nature of the probability of negligence, the plaintiff is still entitled to a directed verdict. Lee v. Tucker, supra.

We think that is the case here. The danger inherent in permitting steam to escape in an industrial building is so great as to require a high degree of caution while disconnecting steam pipes. The appellee had exclusive control over the general maintenance of the pipes and valves.

The probability that, during the process of repair, steam would not escape from the pipes in the absence of negligence is so overwhelming that appellant is entitled to a rebuttable presumption of negligence.

Appellee's employees testified that the valve which controlled the steam in the pipes was closed. But the evidence demonstrates that it was not closed. Either the employee failed to shut the valve, or for some reason the valve failed to shut when the employee attempted to close it. In either event, the appellee had a duty to close the valve before disconnecting the pipe and also a duty to maintain the pipes and valves in a proper working condition.

The testimony that a piece of sediment could have lodged under the valve seat may explain why the valve didn't close, but it does not satisfactorily explain away the obligation of appellee to maintain the valve in proper working order.

The appellee has failed to overcome the rebuttable presumption of negligence, and appellant was entitled to a directed verdict upon that issue. The plaintiff made a motion for a directed verdict and a motion for a judgment notwithstanding the verdict. He has properly preserved his claim to a directed verdict upon the issue of appellee's negligence and that issue need not be retried. Therefore it is unnecessary to discuss the second claimed error pertaining to the instruction or the ruling of the trial judge excluding an "inter-office communication" or a report of the accident made by one of the appellee's employees.

Appellant's final argument relates to the failure of the trial court to exclude a juror for implied bias. This situation will likely not arise on another trial. So we pass it.

By way of counter argument, the appellee says that appellant was not entitled to a directed verdict because he, appellant, was guilty of contributory negligence. Appellee contends that: "Bowers ran solely from noise. He was in no immediate danger or any real danger from the steam that was being discharged from a pipe 14 feet in the air. No steam got into the office. No steam got on Bowers. He could have walked away with no danger at all. He fell because he was running in a frantic motion."

Bowers testified that had he been walking he would never have slipped. Appellee also points out appellant's familiarity with the premises. In support of this argument, the appellee cites Seelbach, Inc. v. Mellman, 293 Ky. 790, 170 S.W.2d 18 (1943). There is a very significant distinction to be drawn between Seelbach and the present case, in that in the former, Mellman was walking casually down a stairway in no apparent hurry. And certainly there was no exciting emergency as is shown in the present case.

The law is pretty well known and well established that one is not required to take the most correct and proper course when acting in an emergency not of his own making. He may act and react according to his own experience and from what he sees and hears. Yet, in all this range of conduct, the test is whether he acted reasonably under all the circumstances. Here appears the reasonably prudent man whose conduct is the guiding light of the conduct of us all.

We hold that appellant was not guilty of contributory negligence as a matter of law but that a jury question was presented.

The judgment is reversed. Upon another trial, the court will direct a verdict for the appellant on the question of appellee's negligence and submit the question of the appellant's contributory negligence along with other issues as to damages to the jury.

EDWARD P. HILL, Jr., NEIKIRK, PALMORE, and STEINFELD, JJ., concur.

REED, J., concurs in result only.

MILLIKEN, C. J., not sitting.

OSBORNE, J., dissents.

OSBORNE, Judge (dissenting).

I do not disagree with the law applied by the majority opinion. I do disagree with the application of that law. I agree that the doctrine of *res ipsa loquitur* applied. I further agree the facts of this case raise a rebuttable presumption of negligence on the part of the defendant. I part with the majority when they hold the facts shown by the defendant are not such as will permit the jury to infer that the loss was not occasioned by a non-negligent cause. Valves often fail without negligence on the part of anyone.

For the foregoing reasons I respectfully dissent.