Secily **BAXTER, Individually; and Frances Baxter, as Administratrix and Personal Representative for the Estate of Joshua Miguel Deangelo Garcia Baxter, Appellants,**

v.

**AHS SAMARITAN HOSPITAL, LLC d/b/a Samaritan Hospital; and Dr. Joseph G. Fine, Appellees.**

No. 2008–CA–000541–MR.

Court of Appeals of Kentucky.

Jan. 15, 2010.

Discretionary Review Denied by Supreme Court Jan. 14, 2011.

H. Wayne Roberts, David N. Zorin (argued), Lexington, KY, for appellants.

James P. Grohmann (argued), Andie Brent Camden, Louisville, KY, for appellee.

Before ACREE, CAPERTON, and KELLER, Judges.

KELLER, Judge.

Secily Baxter (Baxter) appeals the judgment of the Fayette Circuit Court which dismissed her medical malpractice action against Joseph G. Fine, M.D. (Dr. Fine), after the jury found that Dr. Fine was not negligent in failing to remove a surgical sponge from Baxter's abdomen following her appendectomy. Specifically, Baxter contends that the trial court erred: (1) when it denied her motions for summary judgment and directed verdict under the doctrine of negligence *per se* or the doctrine of *res ipsa loquitur*; (2) when it failed to instruct the jury on the doctrine of *res ipsa loquitur*; and (3) when it granted partial summary judgment precluding the estate of Joshua Baxter (Joshua) from bringing a cause of action for wrongful death pursuant to Kentucky Revised Statute (KRS) 411.130. For the reasons set forth below, we affirm.

## FACTS

On January 3, 2003, Baxter delivered her first child at the University of Kentucky Medical Center (UK Medical Center) by caesarean section. Twenty sponges were used during this procedure. After the procedure, there was a discrepancy in the instrument count. As a result, Baxter underwent an x-ray in the immediate postoperative period which revealed no evidence of a foreign body.

On September 16, 2003, Baxter presented to the Emergency Department of Samaritan Hospital (Samaritan) complaining of right lower quadrant pain and vomiting. One day later, Thomas Greenlee, M.D., diagnosed Baxter with an inflamed appendix, and on the following day, Baxter underwent an open appendectomy at Samaritan. Dr. Fine performed the appendectomy.

This procedure involved a five to six-inch incision and required the use of retractors and sponges to facilitate access to the appendix. After Dr. Fine removed the appendix, a Samaritan circulating nurse and a Samaritan scrub tech performed two counts to ensure that all of the sponges and instruments used during the procedure were accounted for and that nothing was left inside Baxter. Both counts reported that two sponges were used during the surgery and that two sponges were removed. As a result, Dr. Fine closed the incision. Although both sponge counts were reported as correct, discovery in this case later revealed that the sponge discovered inside Baxter's body was likely left during the appendectomy performed by Dr. Fine.

On the morning following her appendectomy, Baxter was released from Samaritan. On September 23, 2003, Dr. Fine prescribed Baxter further pain medication after she contacted Dr. Fine's office complaining of continuing pain. On September 26, 2003, Baxter saw Dr. Fine in his office, where he removed Baxter's sutures and evaluated her post-operative condition. During this visit, Baxter complained of a mass in the right side of her abdomen and Dr. Fine told Baxter that she had developed a hematoma (blood clot) which would eventually go away. At the end of Dr. Fine's evaluation, Baxter and her mother received instructions to return to Dr. Fine's office if further problems developed. Baxter never returned or contacted Dr. Fine's office after this visit.

In December of 2003, Baxter became pregnant with her second child. On March 31, 2004, Baxter was seen for a routine prenatal screening exam by a home visit obstetric nurse. During this visit, the nurse noted a "blood clot size of grapefruit [sic]" on Baxter's abdomen. On April 14, 2004, Baxter arrived at the UK Medical Center complaining of vaginal bleeding. A CT scan revealed that Baxter had experienced a placental abruption. A physical examination also revealed a palpable mass in the right quadrant of Baxter's abdomen. On April 16, 2004, after her vaginal bleeding stopped and it was determined that there was no evidence of fetal jeopardy, Baxter was discharged from the hospital with bed rest precautions. On May 19, 2004, during a scheduled obstetric appointment at the UK Medical Center, a physical examination and an ultrasound revealed an abdominal mass in Baxter's right side. As a result, Baxter underwent an exploratory laparotomy surgery on May 25, 2004, which revealed the presence of a sponge in her abdomen. The sponge was removed and Baxter was discharged on May 28, 2004.

On June 2, 2004, Baxter presented to the UK Medical Center in pre-term labor and delivered a 555 gram pre-term male infant, Joshua, consistent with a 24–week gestation. Joshua was immediately placed on life support, and over the next twelve days, Joshua's condition deteriorated. On June 14, 2004, life support intervention was discontinued and Joshua died.

Baxter (initially by way of her mother, Frances Baxter) filed suit in the Fayette Circuit Court against Dr. Fine, Samaritan, and its nursing staff for damages resulting from the retained surgical sponge. Baxter alleged that the retained sponge caused her to experience pain and suffering, an additional medical procedure, and that it caused her to deliver a premature infant.

Also included in the action was a wrongful death claim brought by the estate of Joshua. During the pendency of the litigation, Baxter attained the age of majority and replaced Frances Baxter as the real party in interest. Additionally, Baxter settled her claims against Samaritan.

Prior to trial, Baxter moved for partial summary judgment against Dr. Fine, arguing that he was negligent as a matter of law for leaving a sponge in her during the appendectomy. The trial court denied Baxter's motion for partial summary judgment. However, the trial court granted Dr. Fine's motion for partial summary judgment dismissing the wrongful death claim brought by Joshua's estate.

Following the presentation of evidence by Baxter, Dr. Fine and Baxter each moved for directed verdicts, which both were denied by the trial court. After hearing the evidence, the jury returned a verdict in favor of Dr. Fine. Consequently, the trial court entered a final judgment dismissing Baxter's complaint against Dr. Fine with prejudice. This appeal followed.

## STANDARDS OF REVIEW

The issues raised by Baxter on appeal involve different standards of review; therefore, we will set forth the appropriate standard as we analyze each issue.

## ANALYSIS

### 1. Partial Summary Judgment and Directed Verdict

On appeal, Baxter contends that the trial court erred in overruling her motions for partial summary judgment and directed verdict against Dr. Fine for negligence under either the doctrine of negligence *per se* or the doctrine of *res ipsa loquitur*. Generally, summary judgment is only proper when "there were no issues as to any material fact and that the moving par-

ty was entitled to a judgment as a matter of law." *Pearson ex rel. Trent v. Nat'l Feeding Systems, Inc.,* 90 S.W.3d 46, 49 (Ky.2002). Further, motions for directed verdict are appropriate if the moving party can establish that based on the evidence presented at trial, reasonable minds could not differ on the proper resolution of the case. *Spivey v. Sheeler,* 514 S.W.2d 667, 673 (Ky.1974). However, both standards require the reviewing court to construe the record in the light most favorable to the party opposing the motion. *See Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.,* 807 S.W.2d 476, 480 (Ky.1991); *Meyers v. Chapman Printing Co., Inc.,* 840 S.W.2d 814, 821 (Ky.1992).

In the interim between Baxter and Dr. Fine submitting their briefs to this Court, the Supreme Court of Kentucky in *Nazar v. Branham,* 291 S.W.3d 599 (Ky.2009), overruled the doctrine of negligence *per se* and adopted the *res ipsa loquitur* approach to retained foreign object cases. In adopting the *res ipsa loquitur* approach, the Court held that under this standard, "juries should generally be permitted to determine a healthcare professional's liability in a retained foreign object case." *Id.* at 604. The Court further held that under the doctrine of *res ipsa loquitur,* "juries may—but are not required to—infer negligence from the fact that a surgical item was left in a patient's body." *Id.* at 603.

■ Because the Supreme Court in *Nazar* rejected the *per se* rule in retained foreign object cases, the trial court was correct in refusing to hold Dr. Fine negligent as a matter of law for failing to remove the sponge. Thus, the trial court properly denied Baxter's motions for partial summary judgment and directed verdict under the doctrine of negligence *per se.*

■ Additionally, the trial court correctly denied Baxter's motion for partial summary judgment and her motion for directed verdict under the doctrine of *res ipsa loquitur.* Dr. Fine presented adequate evidence both before and during the trial which created fact issues sufficient to defeat Baxter's motions. First, Baxter's prior caesarean section with an incorrect instrument count created an issue of fact as to who was responsible for the retained sponge. Further, at the time Baxter made her motion for partial summary judgment, only two of Baxter's experts had been deposed, discovery was not complete, and Dr. Fine still had approximately five months until he had to disclose his experts. Although one of Baxter's experts, Dr. Robert Weiss, faulted Dr. Fine for not accounting for the sponge, Baxter's other expert, Dr. William Roberts, did not address Dr. Fine's standard of care with respect to the sponge count. Instead, Dr. Roberts only criticized Dr. Fine for failing to evaluate Baxter more promptly after her discharge from Samaritan and for the thoroughness of Dr. Fine's post-operative examination of Baxter on September 26, 2003.

At trial, Dr. Fine presented expert testimony that it was common practice for doctors to rely on nurses to account for all sponges used during surgery. Further, Dr. Fine presented expert testimony that it was the nursing staff's obligation to count the sponges. Even though the presence of the sponge in Baxter's abdomen constituted *prima facie* evidence of negligence, the expert testimony created a question of fact regarding Dr. Fine's liability for Baxter's injuries. Accordingly, the trial court did not err in denying Baxter's motion for partial summary judgment and her motion for directed verdict against Dr. Fine for negligence.

## 2. Jury Instructions

Next, Baxter argues that the trial court erred by failing to give the jury an instruction on the doctrine of *res ipsa loquitur.* "Alleged errors regarding jury instructions are questions of law and must be examined using a *de novo* standard of review." *Hamilton v. CSX Transp., Inc.,* 208 S.W.3d 272, 275 (Ky.App.2006) (*citing Reece v. Dixie Warehouse and Cartage Co.,* 188 S.W.3d 440, 449 (Ky.App.2006)). The issue on appeal regarding an alleged erroneous jury instruction is whether the instruction misstated the law. *Olfice, Inc. v. Wilkey,* 173 S.W.3d 226, 229 (Ky.2005). The question is not which instructions best state the law. *Id.* at 230.

The *res ipsa loquitur* doctrine is an evidentiary doctrine which allows a jury to infer negligence on the part of the defendant. *Sadr v. Hager Beauty Sch., Inc.,* 723 S.W.2d 886, 887 (Ky.App.1987). The doctrine, however, creates a rebuttable presumption of negligence. *Id.* (*citing Bowers v. Schenley Distillers, Inc.,* 469 S.W.2d 565 (Ky.1971)). On occasion, the rebuttable presumption may be strong enough to require a directed verdict. *Id.* Instructions on *res ipsa loquitur,* however, should not be submitted to a jury. As recognized by the Supreme Court of Kentucky in *Meyers,* jury instructions should not explain evidentiary matters, evidentiary presumptions, or contain unnecessary detail. 840 S.W.2d at 824. This principle applies here. Although Baxter could request the application of the doctrine of *res ipsa loquitur* to avoid a directed verdict or to win a directed verdict, the trial court was correct in refusing to give an instruction on the same.

## 3. Wrongful Death Claim

Finally, Baxter contends that the trial court erred in granting partial summary judgment precluding Joshua's estate from bringing a wrongful death action pursuant to KRS 411.130. We disagree.

KRS 411.130(1) provides that "[w]henever the death of a *person* results from an injury inflicted by the negligence or wrongful act of another, damages may be recovered for the death from the person who caused it. . . ." (Emphasis added). In determining the meaning of the word "person" for purposes of the wrongful death statute, the former Kentucky Court of Appeals held in *Mitchell v. Couch,* 285 S.W.2d 901, 906 (Ky.1955), that a wrongful death action is possible only if the negligence has resulted in the death of a "viable fetus." The court further held that "viable fetus" means that "the child has reached such a state of development that it can presently live outside the female body as well as within it." *Id.* at 905. Once the state of viability is reached, the unborn child becomes a legal person with a separate existence. *Orange v. State Farm Mut. Ins. Co.,* 443 S.W.2d 650, 652 (Ky.1969). As stated in *Mitchell,* the reason "for holding that a viable unborn child is an entity within the meaning of the general word 'person' is because, biologically speaking, such a child is, in fact, a presently existing person, a living human being." 285 S.W.2d at 905.

After a careful review of the record, we conclude that the trial court was correct in determining that there was not a genuine issue of material fact with respect to the viability of Joshua. Although Joshua was placed on life support equipment and survived as a result of such equipment for twelve days, the experts for both Baxter [1] and Dr. Fine concluded that Joshua

---

1. Although three of Baxter's experts were deposed, only one expert, Dr. William Roberts, gave an opinion regarding the viability of Joshua.

was never viable and was not capable of sustaining life apart from his mother. Because Joshua was not viable, his estate could not bring a wrongful death action pursuant to KRS 411.130. Accordingly, the trial court properly granted partial summary judgment dismissing the wrongful death claim brought against Dr. Fine by Joshua's estate.

Even if the trial court erred in granting partial summary judgment, because of the jury verdict, Joshua's estate could not have prevailed in the wrongful death claim. The jury determined that Dr. Fine was not negligent, thus absolving him from liability resulting from the retained sponge. It would be inconsistent to determine that Dr. Fine was liable for damages resulting from the retained sponge after determining that he was not negligent. Because the jury determined Dr. Fine was not negligent, he could not have been liable for the death of Joshua.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the Fayette Circuit Court.

ACREE, Judge, concurs.

CAPERTON, Judge, dissents and files separate opinion.

CAPERTON, Judge, dissenting.

The issue at hand that prompts my dissent is the propriety of a *res ipsa loquitur* instruction in medical negligence cases. In the wake of *Nazar v. Branham*, 291 S.W.3d 599 (Ky.2009), overruling *Laws v. Harter*, 534 S.W.2d 449 (Ky.1975), our case law on medical negligence is open for reform. In giving consideration to such an instruction, I believe that *Nazar* as well as the cases of other states are informative. In *Nazar*, our Supreme Court stated

> The *res ipsa loquitur* approach avoids this unfairness by permitting juries to infer negligence from the fact of the retained foreign object, while granting them the latitude to analyze other facts and evidence relevant to liability. As such, juries are free to analyze the reliability and veracity of the defendant's expert witnesses and weigh it against the likelihood that the surgeon was negligent in failing to remove an object from the plaintiff's body during surgery. The *res ipsa loquitur* standard simply provides a more equitable method for resolving retained foreign object cases. *Nazar* at 604.

The first sentence, in stating that the jury can infer negligence from the fact of the retained object, should serve to illuminate our understanding of the newly-adopted *res ipsa loquitur* doctrine. Absent a jury instruction advising the jury of their ability to infer negligence from the fact of a retained object, how can a jury be expected to fully understand the weight that can be attached to such evidence? True, the arguments of counsel can illuminate the jury as to the facts, but such are only arguments and do not instruct on the law. And, if the law is that the jury can infer negligence from the fact of a retained object, why is it that they are deprived of an instruction? No doubt some will argue that the doctrine of *res ipsa loquitur* is an effective tool to thwart directed verdict and fend-off summary judgment. If true, then why would our Supreme Court say that the jury can infer anything at all, why not merely state that the purpose of the doctrine is only a consideration for the trial court when presented with motions for directed verdict and summary judgment?

Such an instruction merely allows the jury to understand that the facts supporting *res ipsa loquitur* could support a finding of negligence but only in conjunction, as stated in the second half of the sen-

tence, with other facts and evidence relevant to liability. Thus, the jury would give full consideration to all the evidence but understand that the doctrine of *res ipsa loquitur* allows a finding of negligence if they so decide.

In the second sentence of the above quote, our Supreme Court specifically considered the "weighing" of the testimony of defendant's expert witnesses against a retained object in the body of a plaintiff. If the guidance given was not to impose a *res ipsa loquitur* instruction is such cases, why address the jury weighing such evidentiary matters?

Consider the recent decision of the Supreme Court of Missouri in *Sides v. St. Anthony's Medical Center*, 258 S.W.3d 811 (Mo.2008), wherein the Supreme Court of Missouri quoted the Virginia Law Review in stating "In the 43 years since the Second Restatement was promulgated, the commentators have noted that, 'the modern trend is to allow both a *res ipsa loquitur* instruction and expert evidence in medical malpractice cases.'" *Sides* at 816, quoting Karyn K. Ablin, *Res Ipsa Loquitur and Expert Opinion Evidence in Medical Malpractice Cases: Strange Bedfellows*, 82 Va. L.Rev. 325, 327 (1996). One might read the article to question the appropriateness of the application of the *res ipsa loquitur* doctrine. Nevertheless, when the doctrine is adopted our courts must give consideration as to how it is to be applied.

While the change in the law is complete, the changes it effects will need to be determined. I would allow a *res ipsa loquitur* instruction under *Nazar*.