RENDERED: MARCH 15, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1267-MR

SHANNON ASHCRAFT-EVANS                         APPELLANT


                   APPEAL FROM KENTON CIRCUIT COURT
v.                   HONORABLE MARY K. MOLLOY, JUDGE
                     ACTION NO. 19-CI-00768


ALLISON LIED, M.D. AND
MANGAT, HOLZAPFEL AND LIED
PLASTIC SURGERY, P.S.C.                        APPELLEES


<u>OPINION</u>
<u>AFFIRMING</u>

** ** ** ** **

BEFORE: CALDWELL, GOODWINE, AND LAMBERT, JUDGES.

CALDWELL, JUDGE: Shannon Ashcraft-Evans ("Ashcraft-Evans") appeals from a judgment on a jury verdict in favor of Appellees Allison Lied, M.D. and Mangat, Holzapfel and Lied Plastic Surgery, P.S.C. (collectively "Dr. Lied") on a medical malpractice claim. Specifically, Ashcraft-Evans challenges the trial court's denial of her motion for a directed verdict, the trial court's refusal to instruct the jury on

*res ipsa loquitor*, and the denial of her motion for judgment notwithstanding the verdict ("JNOV"). We affirm.

Before explaining our reasons to affirm with discussions of the facts and the parties' arguments, we first address instances of non-compliance with appellate briefing rules.

**We Decline to Impose Sanctions for Non-Compliance with Appellate Briefing Rules but We Urge Greater Care to Comply with Rules in Future to Avoid Serious Consequences**

All briefs were filed in 2023 and are thus subject to the Kentucky Rules of Appellate Procedure which took effect on January 1, 2023. But the red appellant brief does not fully comply with requirements for appendices in our appellate briefing rules.

RAP[1] 32(E)(1) provides in pertinent part:

(a) Documents required in appendix to appellant's and cross-appellant's initial brief. An appellant and a cross-appellant must attach an appendix to the party's initial brief. The first item of the appendix shall be a listing or index of all documents included in the appendix. The appellant shall place the judgment, opinion, or order under review immediately after the appendix list so that it is most readily available to the court. The appendix shall contain copies of the findings of fact, conclusions of law, and judgment of the trial court, any written opinions filed by the trial court in support of the judgment, and the opinion or opinions of the court from which the appeal is taken.

---

[1] Kentucky Rules of Appellate Procedure.

. . . .

(d) Required index and tabs for appendix. The first item of the appendix shall be a listing or index of all documents included in the appendix. The index shall set forth where each document may be found in the record. The items in the appendix shall be separated by appropriate extruding tabs.

Contrary to these requirements, the appendix to the appellant's red brief does not contain an index or listing of all attached documents.[2] *See* RAP 32(E)(1)(a) & (d). Nor does it set forth where each attached document may be found in the record or separate documents by extruding tabs. *See* RAP 32 (E)(1)(d).

The appendix does not contain a copy of the trial court's judgment on the jury verdict.[3] *See* RAP 32(E)(1)(a). Nor is any judgment, opinion, or order under review placed first **before** the documents (other than any index or listing) in the appendix. *See* RAP 32(E)(1)(a).

---

[2] A list of items in the appendix appears within the statement of points and authorities, but not at the beginning of the appendix itself. And this list of items in the statement of points and authorities does not indicate where items may be found in the record.

[3] Including copies of the judgment, opinion or order being reviewed within the appendix helps ensure that all members of the appellate panel have access to and can easily read such judgments, opinions and orders. The appendix to the appellant's brief does contain the September 2022 order denying JNOV, but not the underlying judgment. Fortunately, in this case, copies of the trial court's June 2022 Trial Order and Judgment are available for the panel's review on CourtNet – as are the parties' proposed jury instructions, the trial court's actual instructions to the jury and numerous other pleadings, motions, and other documents.

In addition to these problems with the appendix, the appellant red brief does not comply with RAP 32(A)(4)'s requirement that it "contain at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner."

Such failures to comply with our appellate briefing rules can subject a party to serious consequences. For example: "If a party fails to inform the appellate court of where in the record his issue is preserved, the appellate court can treat that issue as unpreserved." *Ford v. Commonwealth*, 628 S.W.3d 147, 155 (Ky. 2021). This can affect the standard of review as unpreserved issues are reviewed by appellate courts only for palpable error resulting in manifest injustice. *See id.* (citing RCr[4] 10.26); CR[5] 61.02; *Nami Resources Company, L.L.C. v. Asher Land and Mineral, Ltd.*, 554 S.W.3d 323, 338 (Ky. 2018) ("The language of CR 61.02 is identical to its criminal law counterpart, RCr 10.26, and we interpret that language identically."). *See also Progressive Direct Insurance Company v. Hartson*, 661 S.W.3d 291, 298 n.9 (Ky. App. 2023).

In addition to our having discretion to treat issues for which no preservation statement is provided as unpreserved and thus review only for palpable error resulting in manifest injustice, *see, e.g.*, *Ford*, 628 S.W.3d at 155;

---

[4] Kentucky Rules of Criminal Procedure.

[5] Kentucky Rules of Civil Procedure.

we may also impose other penalties for substantial non-compliance with other appellate briefing rules – including striking briefs and dismissing appeals. RAP 31(H). Yet we decline to impose any such sanctions despite deficiencies.

Though the red appellant brief does not contain the required preservation statement at the beginning of the argument, we are satisfied from our review of the record that the issues raised on appeal were raised to and ruled on by the trial court and are therefore preserved for our review. *See Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 734 (Ky. 2009) (issue not raised to the trial court was not preserved for review). So, despite the lack of preservation statement, we decline to treat these issues as unpreserved, meaning that we will not review solely for palpable error resulting in manifest injustice.

And despite our authority to impose other sanctions such as striking briefs for substantial non-compliance, we leniently elect not to impose any of these sanctions for other forms of non-compliance with our appellate briefing rules[6] – including deficiencies in the appellant brief appendix. But we urge counsel to take greater care to review and comply with our appellate briefing rules as we may not be so lenient in the future. *See, e.g.*, *Hamburger v. Plemmons*, 654 S.W.3d 99, 102 (Ky. App. 2022) (declining to fine counsel but striking briefs and dismissing

---

[6] Perhaps there may be differing opinions as to whether, for example, the noted deficiencies in the appellant brief appendix amount to substantial non-compliance. In any event, whether the non-compliance is considered substantial or not, we do not elect to impose sanctions here.

appeal for various failures to comply with then-applicable appellate briefing rules). We next address the facts of this case.

## FACTS

Dr. Lied performed a chemical peel on Ashcraft-Evans' face with an acid known as TCA. Unfortunately, Ashcraft-Evans suffered injury due to acid indisputably getting in one of her eyes during the chemical peel procedure. Getting acid in a patient's eye during a chemical peel was a rare event according to the testimony of Dr. Lied and other doctors.[7]

Ashcraft-Evans filed a medical malpractice lawsuit against Dr. Lied. The parties engaged in discovery and the lawsuit proceeded to trial about three years after suit was filed. Both parties came forward with deposition testimony from experts prior to trial. Their experts expressed differing opinions about whether acid could get in a patient's eye during a chemical peel even if the doctor performing the peel had complied with the standard of care.

---

[7] The written consent form signed by Ashcraft-Evans did not explicitly list eye damage as one of the risks of the chemical peel procedure. Dr. Lied suggested this was because getting acid in a patient's eyes was such a rare event it was not considered a substantial risk of the chemical peel procedure. However, according to a post-operative report prepared by Dr. Lied and Dr. Lied's testimony, Dr. Lied verbally informed Ashcraft-Evans of a risk of eye damage before performing the chemical peel. Ashcraft-Evans alleged lack of informed consent and the jury was instructed to consider whether there was a lack of informed consent. The jury found in Dr. Lied's favor on the question of informed consent. Ashcraft-Evans has not argued any error in the trial court's handling of informed consent issues in this appeal.

Shortly prior to trial, Ashcraft-Evans argued for the first time that the doctrine of *res ipsa loquitor* applied to her case. The trial court entered an order stating that *res ipsa loquitor* did not apply since there was evidence that the injury could occur in the absence of negligence. The order further stated that the plaintiff must support her negligence claims with expert testimony.

The parties presented deposition and live testimony at trial. Ashcraft-Evans' expert, Dr. Strasser, testified that getting acid in a patient's eye during a chemical peel could not happen unless the doctor had done something wrong; in essence, had breached the standard of care. But Dr. Lied and her expert expressed opinions that acid could possibly get in a patient's eye during a chemical peel even if the doctor performing the procedure did not do anything wrong.

These doctors all expressed the importance of properly squeezing out excess liquid from the gauze used to apply TCA and perhaps taking additional steps to make sure that the doctor performing a chemical peel could control the acid and avoid contact with eyes. However, they noted that drops could often simply be rubbed into the skin before getting near the eyes and that acid getting into a patient's eye during chemical peels was very rare. None of the doctors were aware of any instances of acid getting in a patient's eyes during a chemical peel in their own experience or in the experience of other doctors they knew.

Dr. Lied also discussed her recollection of performing the chemical peel on Ashcraft-Evans' face in deposition and live testimony. She described how she typically performed the procedure in deposition testimony. She would put a small amount of TCA in a cup, dip some gauze in the cup, squeeze the cup to moisten the gauze, and then squeegee and squeeze the gauze until it was moist but not dripping. She noted the gauze must not be dripping because she wanted to be able to control exactly where the TCA went.

Dr. Lied testified she recalled seeing a small drop of acid going down the side of Ashcraft-Evans' nose after she applied the gauze and while the patient's eyes were closed. She recalled using a clean piece of gauze to rub the drop in and initially thinking no acid went in the patient's eye until she saw the patient wince. She admitted that drops of acid should not get loose during the procedure, and that some acid did get into Ashcraft-Evans' eye.

Although she did not recall performing the procedure any differently than she would normally, Dr. Lied admitted in her deposition that somehow there must have been more TCA on the gauze than she thought because a small drop came out. She testified to thinking she had squeezed out the gauze adequately, but admitted it was possible she had not. She opined that getting TCA into a patient's eyes was possibly preventable, but also stated sometimes things happened that were out of one's control. She admitted there was no third party whose intervening

act would have caused something out of her control; instead, she was the only one to control the TCA. Also, she testified there was nothing different about the gauze or the acid used in Ashcraft-Evans' procedure than that used at other times.

Defense expert Dr. Kitzmiller admitted he had not been present to see Dr. Lied perform the procedure so he could not say for sure if she had squeezed out enough liquid from the gauze. But when asked if the only explanation for acid getting in the eye was inadequate squeezing of the gauze or the doctor doing something wrong, he disagreed – although he did not offer a clear explanation of how the acid could get in a patient's eye during a chemical peel despite a doctor properly squeezing excess liquid from the gauze.

Similarly, at trial, Dr. Lied did not offer a definitive explanation of how acid could get in a patient's eye during a chemical peel if the gauze was properly squeezed out. However, she denied doing anything wrong, insisting she had properly squeezed and squeegeed to make sure the gauze was moist but not dripping as always. She testified that perhaps microscopic permeation or diffusion had occurred after she wiped the drop away.

Ashcraft-Evans moved for a directed verdict in her favor based on *res ipsa loquitor*. She also tendered a jury instruction about *res ipsa loquitor*. The

trial court denied her motion for directed verdict and refused to give the tendered

jury instruction about *res ipsa loquitor*.[8]

The jury returned a verdict in Dr. Lied's favor.  Ashcraft-Evans filed a

motion for JNOV or a new trial, which the trial court denied.  Ashcraft-Evans then

filed a timely appeal.  Further facts will be discussed as needed.

## ANALYSIS

### *Res Ipsa Loquitor* Requirements and Application

A plaintiff has the burden to prove negligence and often lacks direct

evidence of negligence.  But sometimes a plaintiff may be able to prove negligence

---

[8] Ashcraft-Evans' tendered Instruction No. 3 read as follows:

> You Are instructed that if you should find that:  (1) the accident alleged is of a
> kind that ordinarily does not occur in the absence of someone's negligence; (2)
> the accident was caused by an instrumentality within the exclusive control of the
> defendant; and (3) the accident occurred without any voluntary act on the part of
> the plaintiff contributing to the result, then an inference that the defendant was
> negligent arises.  The inference is called **res ipsa loquitur**.  **Res ipsa loquitur**
> does not require that the plaintiff produce evidence excluding all possible causes
> other than the defendant's negligence; the plaintiff need demonstrate only a
> "balance of probabilities" pointing to the defendant's negligence as a cause of the
> accident.  The requirement that the instrumentality be under the management and
> control of the defendant does not mean, or is not limited to, actual physical
> control, and you may find the doctrine applicable if the defendant had the right of
> control at the time of the accident.
>
> Question 1. Do you find for the Plaintiff Shannon-Ashcraft-Evans under this
> Instruction?

(Record on Appeal, "R," p. 241).  Ashcraft-Evans' tendered instructions asked the jury to first
consider the *res ipsa loquitor* issue in Instruction No. 3, before determining whether Dr. Lied had
been negligent in providing treatment or failed to obtain Ashcraft-Evans' informed consent in
tendered Instructions No. 4 through 6.  (R, pp. 242-46.)

-10-

through circumstantial evidence.  Under certain circumstances, a rebuttable presumption or permissible inference of negligence may arise.  *Bowers v. Schenley Distillers, Inc.*, 469 S.W.2d 565, 568 (Ky. 1971).

For example, sometimes a rebuttable presumption of negligence may arise if the requirements of *res ipsa loquitor* are met.  *Id.* at 568-69.  For *res ipsa loquitor* to possibly apply, the following requirements must be shown:

> (1) The defendant must have had full management of the instrumentality which caused the injury; (2): the circumstances must be such that, according to common knowledge and the experience of mankind, the accident could not have happened if those having control and management had not been negligent; (3) the plaintiff's injury must have resulted from the accident.

*Id.* at 568 (quoting *Vernon v. Gentry*, 334 S.W.2d 266, 268 (Ky. 1960)).

Naturally, a typical non-physician layperson often lacks the expertise to know whether certain medical events generally occur in the absence of negligence.  So, often it is not appropriate to apply *res ipsa loquitor* to infer negligence merely from undesirable results of medical treatment – at least in the absence of expert testimony.  *See Perkins v. Hausladen*, 828 S.W.2d 652, 654-55 (Ky. 1992).  However, there are two limited exceptions to this general rule.  These two exceptions for possibly applying *res ipsa loquitor* to infer negligence in medical malpractice cases are:  1) where the occurrence is one where even a layperson can properly assume the occurrence generally results from a lack of care

-11-

or skill – such as leaving a foreign object in a patient's body during a medical procedure – so that expert testimony is not required to infer negligence, and 2) more complex situations where expert testimony may be required to provide a foundation for applying *res ipsa loquitor*.  *Id.* at 655.

Perhaps addressing the second exception, our Supreme Court discussed how sometimes medical testimony may provide support for applying *res ipsa loquitor* to infer negligence even where there is no direct expert testimony that the standard of care was breached.  It reviewed precedent, summarizing:  "In all of these cases an inference of negligence was sufficiently supplied by medical testimony of record even though the plaintiff had no expert witness to opine that the conduct fell below the standard of acceptable professional care."  *Id.* (citing *e.g.*, *Jewish Hospital Ass'n of Louisville, Ky. v. Lewis*, 442 S.W.2d 299 (Ky. 1969)).  And it specifically noted that sometimes the testimony needed to infer medical negligence might come from an admission by the defendant doctor. *Hausladen*, 828 S.W.2d at 655 (citing *Jarboe v. Harting*, 397 S.W.2d 775, 778 (Ky. 1965)).

Often when no expert is located to testify to a breach of the standard of care, medical malpractice plaintiffs raise the issue of *res ipsa loquitor* before trial to avoid a summary judgment in favor of the defendant.  *See, e.g.*, *Blankenship v. Collier*, 302 S.W.3d 665 (Ky. 2010).  However, as noted by the trial

court, Ashcraft-Evans did not explicitly argue for the application of *res ipsa*

*loquitor* until shortly before trial and she came forward with expert testimony in

her favor prior to trial. Instead of the more typical scenario of a plaintiff arguing

*res ipsa loquitor* to avoid judgment for the defendant despite a lack of expert

testimony in the plaintiff's favor, Ashcraft-Evans argued at trial that she was

entitled to a directed verdict based on application of *res ipsa loquitor*.

Certainly, whether a party is entitled to a directed verdict may be

affected by the application of *res ipsa loquitor* – which permits an inference of or

even a rebuttable presumption of negligence when the requirements for its

application are met:

> *Res ipsa loquitur* is an evidentiary doctrine that would
> permit a jury to infer negligence from the state of the
> circumstances themselves. *Sadr v. Hager Beauty School,
> Inc.*, 723 S.W.2d 886 (Ky. App. 1987). If the inference
> to be drawn is strong enough, it can create a rebuttable
> presumption of negligence, potentially resulting in a
> directed verdict. *Id.*, *citing Bowers v. Schenley Distillers,
> Inc.*, 469 S.W.2d 565 (Ky. 1971).

*Bryan v. CorrectCare-Integrated Health, Inc.*, 420 S.W.3d 520, 524 (Ky. App.

2013). *See also Baxter v. AHS Samaritan Hosp., LLC*, 328 S.W.3d 687, 692 (Ky.

App. 2010) (noting medical malpractice plaintiff "could request the application of

the doctrine of *res ipsa loquitur* to avoid a directed verdict or to win a directed

verdict"). But even if *res ipsa loquitor* requirements are met by the facts of a case,

Kentucky precedent makes clear that a factfinder **may**, but is not required to, infer

-13-

negligence.  *See Nazar v. Branham*, 291 S.W.3d 599, 604 (Ky. 2009) (Characterizing *res ipsa loquitur* as applied to medical malpractice cases in which objects were left in patients' bodies after medical procedures as "permitting juries to infer negligence from the fact of the retained foreign object, while granting them the latitude to analyze other facts and evidence relevant to liability.").  So, even if facts are found to support the requirements for *res ipsa loquitor*, this does not always mean that a plaintiff is entitled to judgment in his/her favor.

As liability is not guaranteed by meeting the requirements for *res ipsa loquitor* and as the medical evidence regarding *res ipsa loquitor* requirements was conflicting based on our review of the record, we conclude the trial court did not err in denying Ashcraft-Evans' motions for directed verdict and for JNOV.

**No Reversible Error in Trial Court's Denying Directed Verdict and JNOV**

As we stated in long-standing precedent:

In ruling on either a motion for a directed verdict or a motion for judgment notwithstanding the verdict, a trial court is under a duty to consider the evidence in the strongest possible light in favor of the party opposing the motion.  Furthermore, it is required to give the opposing party the advantage of every fair and reasonable inference which can be drawn from the evidence.  And, it is precluded from entering either a directed verdict or judgment n.o.v. unless there is a complete absence of proof on a material issue in the action, or if no disputed issue of fact exists upon which reasonable men could differ.

-14-

*Taylor v. Kennedy*, 700 S.W.2d 415, 416 (Ky. App. 1985). *See also Belt v. Cincinnati Insurance Company*, 664 S.W.3d 524, 530 (Ky. 2022); *Louisville and Jefferson Cnty. Metropolitan Sewer District v. T+C Contracting, Inc.*, 570 S.W.3d 551, 576 (Ky. 2018). On appeal, we review the denial of directed verdict and of JNOV under essentially the same standards. *Id*. The trial court's denial of JNOV must be affirmed unless there is a complete lack of evidence on a material issue or there is no issue of material fact on which reasonable people could differ. *Savage v. Three Rivers Medical Center*, 390 S.W.3d 104, 111 (Ky. 2012). Similarly, the trial court's denial of directed verdict must be affirmed unless there is no way the jury could have reasonably reached its verdict based on the evidence before it. *Belt*, 664 S.W.3d at 530. *See also T+C Contracting, Inc.*, 570 S.W.3d 551:

> Upon review of the evidence supporting a judgment entered upon a jury verdict, the role of an appellate court is limited to determining whether the trial court erred in failing to grant the motion for directed verdict. All evidence which favors the prevailing party must be taken as true and the reviewing court is not at liberty to determine credibility or the weight which should be given to the evidence, these being functions reserved to the trier of fact. The prevailing party is entitled to all reasonable inferences which may be drawn from the evidence. Upon completion of such an evidentiary review, the appellate court must determine whether the verdict rendered is palpably or flagrantly against the evidence so as 'to indicate that it was reached as a result of passion or prejudice.

*Id.* at 576 (quoting *Lewis v. Bledsoe Surface Mining Co.*, 798 S.W.2d 459, 461-62 (Ky. 1990)) (internal quotation marks omitted).

In short, we must take all evidence in Dr. Lied's favor as true, apply all reasonable inferences from the evidence in Dr. Lied's favor, and defer to the fact-finder's judgment on the weight and credibility of the evidence. Viewing the evidence of record in this manner, we conclude that the trial court did not err in entering judgment in conformity with the jury's verdict rather than granting Ashcraft-Evans' motion for a directed verdict or JNOV. While another factfinder might reach a different conclusion, the jury could have reasonably reached its verdict based on the evidence, there is not a complete lack of evidence to support the jury's verdict, and the verdict rendered was not so flagrantly against the evidence as to indicate passion or prejudice. Though perhaps a better case for a directed verdict in favor of a medical malpractice plaintiff might be established by uncontradicted evidence establishing the required elements of *res ipsa loquitor*, the medical evidence here was conflicting regarding the key issue of whether the medical event (acid getting in the patient's eyes during a chemical peel) could occur in the absence of negligence.

Ashcraft-Evans' expert, Dr. Strasser, clearly disagreed with any assertion that acid could get into a patient's eye during a chemical peel even if the doctor did nothing wrong because the acid was under the doctor's control. In

contrast, defense expert Dr. Kitzmiller expressly disagreed with the assertion that acid could not get into a patient's eye if the doctor did nothing wrong – even though he could not explain exactly how this would occur if the gauze was properly squeezed out and he admitted he could not say whether Dr. Lied properly squeezed out the gauze until it was moist but not dripping since he did not observe the procedure. And not only was this expert medical testimony conflicting on whether acid could go in the patient's eyes in the absence of negligence, but the record does not conclusively support Ashcraft-Evans' argument that Dr. Lied admitted to a breach of the standard of care.

Ashcraft-Evans notes Dr. Lied and Dr. Kitzmiller testified to the standard of care being to squeeze out gauze enough for it to be moist but not dripping. She suggests that Dr. Lied admitted to breaching this standard of care by allowing the gauze to drip. But admitting to seeing a drop is not the exact same thing as admitting to not squeezing out the gauze enough and letting it drip. And Dr. Lied did not explicitly admit to having failed to control the acid.

Ashcraft-Evans notes Dr. Lied admitted seeing a drop of liquid traveling down the patient's eyes to the patient's nose and admitted being the only one responsible for making sure enough liquid was squeezed out of the gauze. But based on our careful review of Dr. Lied's testimony, Dr. Lied did not admit to seeing the gauze dripping or failing to control the acid. Dr. Lied testified to

squeezing and squeegeeing the gauze just like she always did and to observing that it did not appear to be dripping before she applied the gauze. Dr. Lied admitted seeing a drop going down the nose and wiping it away, although she also admitted acid went in the patient's eye and the acid must have come from the gauze. She testified that perhaps some microscopic permeation or diffusion occurred after she wiped the drop away, and she denied having done anything wrong despite acid admittedly getting in Ashcraft-Evans' eye.

In sum, there is no clear admission of breaching the standard of care by Dr. Lied and there is conflicting expert testimony about whether acid could get in a patient's eye during a chemical peel in the absence of negligence. But given its obligation to construe the evidence in the opposing party's favor for purposes of ruling on directed verdict or JNOV motions, the trial court did not err in denying the motions for directed verdict or for JNOV. This is especially true because there was not uncontroverted evidence of a breach of the standard of care nor even uncontroverted evidence of all requirements for applying *res ipsa loquitor*. The conflicting evidence meant that the jury alone had the right and ability to weigh the evidence and to choose which evidence to believe and which to reject. We must affirm the denial of the motions for directed verdict and JNOV.

Next, we address the arguments about jury instructions.

**We are Compelled to Affirm as Trial Court's Refusal to Instruct on *Res Ipsa Loquitor* is Consistent with Binding Precedent**

Issues about the content of the trial court's instructions given to the jury must be reviewed *de novo* on appeal. *Norton Healthcare, Inc. v. Disselkamp*, 600 S.W.3d 696, 710 (Ky. 2020). However, the trial court's refusal to give a tendered jury instruction is reviewed for abuse of discretion. *Id.* at 733. *See also Sargent v. Shaffer*, 467 S.W.3d 198, 203-04 (Ky. 2015), *overruled on other grounds by University Medical Center, Inc. v. Shwab*, 628 S.W.3d 112, 129 (Ky. 2021).

Regardless of the exact standard of review, our precedent makes clear that a trial court cannot properly give a jury instruction about *res ipsa loquitor* because "jury instructions should not explain evidentiary matters, evidentiary presumptions, or contain unnecessary detail." *Baxter*, 328 S.W.3d at 692 (citing *Meyers v. Chapman Printing Co., Inc.*, 840 S.W.2d 814, 824 (Ky. 1992)). *Accord Bryan*, 420 S.W.3d at 524-25. *See also Disselkamp*, 600 S.W.3d at 723 (indicating that jury instructions about evidentiary presumptions are forbidden under Kentucky's bare bones approach).

There may be good arguments for rejecting the holding in precedent such as *Baxte*r or *Meyers* and instead allowing jury instructions about evidentiary

matters[9] – such as the fact finder's prerogative to infer negligence if *res ipsa loquitor* requirements are met. This may be especially true where, as here, there is conflicting expert testimony about whether requirements for *res ipsa loquitor* are met – especially whether an event such as acid getting in a patient's eye during a chemical peel could happen in the absence of negligence. But we lack the authority to overrule precedent from our Supreme Court such as *Meyers*. SCR[10] 1.030(8)(a). And we decline to overrule our own precedent interpreting *Meyers* to forbid jury instructions on *res ipsa loquitor* in *Baxter* and *Bryan*, since this Court clearly followed and did not misconstrue *Meyers*' clear and somewhat broad language forbidding jury instructions about evidentiary presumptions and other evidentiary matters.

After all, *Meyers* clearly states that Kentucky's bare bones approach to jury instructions does not permit jury instructions about "evidentiary matters."

---

[9] Some may suggest the trial court's duty to instruct the jury on the law may be better met by allowing a trial court, upon a similar evidentiary record, to give the jury a simple instruction making clear that the jury may, but does not have to, infer negligence if the required elements for *res ipsa loquitor* are met. Some might suggest different language or a shorter, less detailed instruction than Ashcraft-Evans' tendered instruction on *res ipsa loquitor* to inform the jury of its prerogative to infer negligence if it finds facts supporting *res ipsa loquitor* requirements yet comply with Kentucky's bare bones approach to jury instructions. We need not reach whether the exact language of the tendered instruction was appropriate, however, as we conclude the trial court correctly followed binding precedent in declining to instruct the jury on *res ipsa loquitor*.

[10] Rules of the Kentucky Supreme Court.

840 S.W.2d at 824.  And it further flatly forbids jury instructions on presumptions, which could arise if *res ipsa loquitor* is applied:

> In Kentucky jury instructions do not include evidentiary presumptions.  Such presumptions alter the burden of going forward with the evidence, and thus may result in a directed verdict in the absence of countervailing evidence, but the jury instructions should be framed only to state what the jury must believe from the evidence in order to return a verdict in favor of the party who bears the burden of proof.

*Id*.  *See also Disselkamp*, 600 S.W.3d at 723 (explaining how "bare-bones instructions do not include unnecessary detail such as evidentiary presumptions" because presumptions affect whether a trial court submits an issue to the jury while jury instructions should focus on the jury's determination of the ultimate issue of fact, providing minimal detail yet "enough law and background knowledge so that the jury comes to a decision that is supported by law").

In sum, Ashcraft-Evans could not prevail on her jury instruction argument unless our Supreme Court limits, modifies, or clarifies its holding forbidding jury instructions on evidentiary presumptions or other evidentiary matters in *Meyers* and similar precedent such as *Disselkamp*.  We must follow precedent from our Supreme Court and affirm the trial court's denial of Ashcraft-Evans' request for a *res ipsa loquitor* instruction.  To the extent that our reasoning differs from the trial court's, we may affirm for any reason supported by the record

and the law.  *See generally Mark D. Dean, P.S.C. v. Commonwealth Bank & Tr. Co.*, 434 S.W.3d 489, 496 (Ky. 2014).

Further arguments raised by the parties which are not discussed herein have been determined to lack merit or relevancy to our resolving this appeal.

## CONCLUSION

For the reasons set forth in this opinion, we AFFIRM the judgment of the Kenton Circuit Court.


ALL CONCUR.


BRIEFS FOR APPELLANT:

David M. Blank
Covington, Kentucky

BRIEF FOR APPELLEES:

Judd R. Uhl
Cincinnati, Ohio